**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| United States of America *ex rel.* Nicholas Zimniski; State of Alaska *ex rel.* Nicholas Zimniski; State of California *ex rel.* Nicholas Zimniski; State of Colorado *ex rel.* Nicholas Zimniski; State of Connecticut *ex rel.* Nicholas Zimniski; State of Delaware *ex rel.* Nicholas Zimniski; District of Columbia *ex rel.* Nicholas Zimniski; State of Florida *ex rel.* Nicholas Zimniski; State of Georgia *ex rel.* Nicholas Zimniski; State of Hawaii *ex rel.* Nicholas Zimniski; State of Illinois *ex rel.* Nicholas Zimniski; State of Indiana *ex rel.* Nicholas Zimniski; State of Iowa *ex rel.* Nicholas Zimniski; State of Louisiana *ex rel.* Nicholas Zimniski; State of Maryland *ex rel.* Nicholas Zimniski; Commonwealth of Massachusetts *ex rel.* Nicholas Zimniski; State of Michigan *ex rel.* Nicholas Zimniski; State of Minnesota *ex rel.* Nicholas Zimniski; State of Montana *ex rel.* Nicholas Zimniski; State of Nevada *ex rel.* Nicholas Zimniski; State of New Jersey *ex rel.* Nicholas Zimniski; State of New Mexico *ex rel.* Nicholas Zimniski; State of New York *ex rel.* Nicholas Zimniski; State of North Carolina *ex rel.* Nicholas Zimniski; State of Oklahoma *ex rel.* Nicholas Zimniski; State of Rhode Island *ex rel.* Nicholas Zimniski; State of Tennessee *ex rel.* Nicholas Zimniski; State of Texas *ex rel.* Nicholas Zimniski; State of Vermont ex rel. Nicholas Zimniski; Commonwealth of Virginia *ex rel.* Nicholas Zimniski; State of Washington *ex rel.* Nicholas Zimniski, and Doe States *ex rel.* Nicholas Zimniski<br><br>Plaintiffs,<br><br>v.<br><br>CVS Health Corporation,<br>CVS Pharmacy Inc., | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **2ND AMENDED COMPLAINT**<br><br>**CIVIL NO. 19 CV 01550**<br><br>**<u>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)</u>**<br><br>**JURY TRIAL REQUESTED** |

Alabama CVS Pharmacy LLC, §
Alaska CVS Pharmacy LLC, §
American Drug Stores Delaware LLC, §
Arbor Drugs Inc., Arizona CVS Stores LLC §
Arkansas CVS Pharmacy LLC, Asbury §
Evanston CVS LLC, Bergen Mall NJ CVS §
Inc., Big B Drugs Inc., Brown Recker CVS §
LLC, Busse CVS LLC, CareCenter §
Pharmacy LLC, Connecticut CVS §
Pharmacy LLC, CVS §
2948 Henderson LLC, CVS 2989 Las Vegas §
LLC, CVS 3264 Phoenix LLC, CVS 3268 §
Gilbert LLC, CVS 3745 Peoria LLC, CVS §
Albany LLC, CVS Bellmore Avenue LLC, §
CVS EGL Baseline Tempe AZ LLC, CVS §
Gilbert 3272 LLC, CVS Manchester §
NH LLC, CVS Of Pennsylvania, Inc., §
CVS Of Virginia Inc., CVS State Capital §
LLC, Delaware CVS Pharmacy LLC, §
Desert Eastern CVS LLC, District Of §
Columbia CVS Pharmacy LLC, Garfield §
Beach CVS, LLC, Georgia CVS Pharmacy §
LLC, German Dobson CVS LLC, Goodyear §
CVS LLC, Grand St. Paul CVS LLC, §
Henderson CVS LLC, Highland Park CVS §
LLC, Holiday CVS LLC, Hook SuperX §
Inc., Idaho CVS Pharmacy LLC, Iowa §
CVS Pharmacy LLC, Kankakee Il §
CVS LLC, Kansas CVS Pharmacy LLC, §
Kentucky CVS Pharmacy LLC, Longs §
Drug Store California LLC, Louisiana §
CVS Pharmacy LLC, Main Street Pharmacy §
Maryland CVS Pharmacy LLC, Maryland §
Parkway CVS LLC, Michigan Chicago CVS §
LLC, Mississippi CVS Pharmacy LLC, §
Missouri CVS Pharmacy LLC, Montana §
CVS Pharmacy LLC, Nebraska CVS §
Pharmacy LLC, Nevada CVS Pharmacy §
LLC, New Jersey CVS Pharmacy LLC, §
North Carolina CVS Pharmacy LLC, §
Ohio CVS Stores LLC, Oklahoma CVS §
Pharmacy LLC, Oregon CVS Pharmacy §
LLC, Pennsylvania CVS Pharmacy LLC, §
ProCare Pharmacy LLC, Puerto Rico §
CVS Pharmacy LLC, Rea And Derick Inc. §

**P 1835, Revco Discount Drug Centers Inc., Rhode Island CVS Pharmacy LLC, Senip CVS LLC, Sheffield Avenue CVS LLC, South Carolina CVS Pharmacy LLC, South Wabash CVS LLC, Tennessee CVS Pharmacy LLC, Thomas Phoenix CVS LLC, University Mesa CVS LLC, Utah CVS Pharmacy LLC, Vermont CVS Pharmacy LLC, Virginia CVS Pharmacy LLC, Warm Springs Road CVS LLC, Washington CVS Pharmacy LLC, West Jackson CVS LLC, West Virginia CVS Pharmacy LLC, Wisconsin CVS Pharmacy LLC, Woodlawn Chicago CVS LLC, Woodward Detroit CVS LLC,** §

[redacted] **Alcon Laboratories, Inc., Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC, Pfizer, Inc., Bausch and Lomb, Inc., Aerie Pharmaceuticals, Inc., Merck & Co., Inc., Merck, Sharp & Dohme (I.A.) Corp., Akorn, Inc., Cardinal Health, Inc., Amerisource Bergen Corporation and McKesson Corporation** §

**Defendants.** §

## SECOND AMENDED COMPLAINT

## I. SUMMARY

1. This is a civil fraud action brought by plaintiff-relator Nicholas Zimniski against Defendants (1) CVS Health Corporation and CVS Pharmacy, Inc. ("the CVS Corporate Entities"), and their numerous operating subsidiaries (hereinafter "the CVS Operating Entities") (collectively "CVS"); [redacted] (3) Alcon Laboratories, Inc. ("Alcon"), Allergan, Inc., Allergan USA, Inc., and

Allergan Sales, LLC (collectively "Allergan"), Pfizer, Inc. ("Pfizer"), Bausch and Lomb, Inc. ("Bausch"), Aerie Pharmaceuticals, Inc. ("Aerie"), Merck & Co., Inc., Merck and Sharp & Dohme (I.A.) Corp. (collectively "Merck"), Akorn, Inc. ("Akorn") (collectively "the Eye Drop Manufacturers") and (4) Cardinal Health Inc. ("Cardinal"), AmerisourceBergen Corporation ("AmerisourceBergen"), and McKesson Corporation ("McKesson") (collectively "the Distributors") to recover damages and civil penalties arising from their violations of the federal and state false claims acts and the private insurance fraud prevention acts of California and Illinois in connection with dispensing [redacted] and eye drops to beneficiaries of government healthcare programs. (CVS, [redacted], the Eye Drop Manufacturers and the Distributors are collectively "Defendants").

2. When pharmacy chains like CVS seek reimbursement from private insurers and government healthcare programs for [redacted] eye drops dispensed to customers, they are required to submit accurate data concerning, among other things, the days of supply for each prescription filled. In pharmacy practice, days of supply mean the number of days that the amount of [redacted] eye drops being dispensed should last if the patient used the drug strictly according to his prescriber's directions for use. Having accurate days-of-supply data is critical to government healthcare programs and private insurers because they rely on the days-of-supply data reported by pharmacies like CVS to decide whether to pay for a refill or to deny a refill claim as premature.

3. For at least 10 years prior to the filing of this action, the CVS Operating Entities have routinely submitted false [redacted] eye-drop claims to private insurers in the states of California and Illinois (collectively the "private insurers") and to federal and state health care programs such as Medicare Part D ("Medicare"), Medicaid, the Federal Employees Health Benefits Program ("FEHBP"), the United States Department of Veterans Affairs ("VA") health

care program, the TRICARE/CHAMPUS program, and the workers' compensation program administered by the U.S. Department of Labor (collectively, the "government healthcare programs"). These fraudulent submissions by CVS have resulted from four standard practices of the CVS Corporate Entities in relation to how CVS stores are required to dispense [redacted] eye drops to customers and seek reimbursement from private insurers and government healthcare programs.

4. [redacted].

5. Second, the CVS pharmacies do not accurately calculate the days' supply when dispensing ophthalmic medications. Instead they use a guidance chart to estimate 15 drops per mL for all eye-drop prescriptions regardless of individual drugs' variations from this standard. By overestimating the drop size provided by the manufacturer's eye drop delivery system, CVS causes nearly all claims to be inaccurate when reporting the days' supply.

6. Third, if dispensing [redacted] the chosen number of eye drop containers would exceed the maximum days of supply limit for [redacted] eye drops established by private insurers or government healthcare programs, CVS pharmacists falsely report that the days of supply for the [redacted] containers of eye drops equal the applicable limit, instead of reporting the actual days of supply as calculated according to the standard pharmacy billing formulas.

7. Fourth, CVS enrolls almost all its customers suffering from [redacted] glaucoma and other chronic conditions in its "ReadyFill" program, which automatically refills the patient's prescription at the expiration of 30 or 90 days, meaning that a customer who has been dispensed more drug than he can use according to doctors' instructions during the initial 30 or 90-day period will nevertheless receive continuing refills that oversupply him with the prescribed drug.

8. By engaging in these practices, CVS pharmacies have submitted hundreds of thousands of false [redacted] eye drop claims, which understated days of supply, to the relevant private insurers and government healthcare programs. Further, by under-reporting the days of supply data, CVS prevents the automated checks established by the government healthcare programs and private insurers from identifying and denying premature refill claims. This, in turn, causes those insurers and programs to pay for more [redacted] eye drops than many customers actually need.

9. The [redacted] Eye Drop Manufacturers and the Distributors have engaged in various actions and practices detailed below, including product packaging schemes and payment of kickbacks to patients and pharmacies, by which they have induced patients to purchase quantities of drugs in excess of a 30- or 90-day supply and have foreseeably caused CVS and other pharmacies, including Walgreens and Rite Aid, to submit false claims to private insurers and government healthcare programs for such drugs as though they comprised a 30- or 90-day supply.

10. *Qui tam* relator Nicholas Zimniski, a pharmacy manager employed by various CVS operating entities at 44 different stores over the course of fourteen years ("Relator"), brings this civil action on behalf of the United States under the *qui tam* provisions of the federal False

Claims Act, 31 U.S.C. § 3729 *et seq.*; and on behalf of the state Plaintiffs under analogous *qui tam* provisions of the states; and on behalf of the states of California and Illinois under the private insurance *qui tam* laws of those states.

## II. JURISDICTION AND VENUE

11. Count 1 of the Complaint is a civil action by Relator acting on behalf of the United States against all Defendants under the federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA"). This Court has jurisdiction over Count 1 pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3732(a).

12. Counts 2 through 36 of this Complaint are civil actions by Relator acting on behalf of the various states named as Plaintiffs under the false claim laws and private insurance *qui tam* laws of such states against the CVS Corporate Entities, [redacted] the Eye drop Manufacturers, the Distributors and various CVS Operating Entities that do business in those particular states. This Court has jurisdiction over Counts 2 through 36 under 28 U.S.C. § 1331, because the claims arise under federal law; under 31 U.S.C. § 3732(b), because these Counts arise from the same transactions or occurrences as the claims brought in Count 1; and/or under 28 U.S.C. § 1367, because these counts form part of the same case or controversy as the claims brought in Count 1.

13. The CVS Corporate Entities, CVS Albany LLC, ProCare Pharmacy LLC, [redacted] the Eye Drop Manufacturers and the Distributors transact business in this judicial district and have engaged in acts in this judicial district that are proscribed under § 3729 of the FCA. All other Defendants are subject to nationwide service of process in this district under § 3732(a) of the FCA. Accordingly, this Court has personal jurisdiction over all Defendants

under § 3732(a) of the FCA, and venue is appropriate in this district pursuant to both 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

14. Relator is unaware of any prior public disclosure of the allegations or transactions set forth in this Complaint, as those terms are used in 31 U.S.C. § 3730(e)(4)(A).

15. To the extent any allegation set forth in this Complaint may be similar to allegations or transactions that have been publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A), Relator is permitted to proceed with this lawsuit because he is an "original source" as that term is defined in 31 U.S.C. § 3730(e)(4)(B).

16. Before filing this complaint, Relator voluntarily provided the information set forth herein to the United States and all of the plaintiff states. Moreover, Relator's information set forth herein is independent from, and materially adds to, any public disclosures that may have occurred before Relator disclosed these matters to the federal and state officials.

## III. THE PARTIES

### Relator

17. Nicholas Zimniski is a pharmacist currently employed by Longs Drug Store California LLC, one of the CVS Operating Entities. He has been employed in 44 CVS stores operated by various CVS Operating Entities since March 2007, although his pay checks and W-2 tax forms are now and always have been issued by CVS Pharmacy, Inc. acting as agent for CVS RX Services, Inc. The stores where the Relator worked are as follows:

| Store No. | City | State |
|---|---|---|
| 9863 | Costa Mesa | CA |
| 9242 | Mission Viejo | CA |
| 2394 | Belpre | OH |
| 3403 | Chesapeak | OH |
| 3474 | Ironton | OH |
| 3422 | Marietta | OH |
| 3498 | New Boston | OH |
| 3417 | Portsmouth | OH |
| 7777 | Portsmouth | OH |
| 1320 | Broadheadsville | PA |
| 1597 | Clarks Summit | PA |
| 1594 | Dallas | PA |
| 1615 | Dickson City | PA |
| 1612 | Dunmore | PA |
| 3062 | Effort | PA |
| 1616 | Exeter | PA |
| 748 | Hamlin | PA |
| 1614 | Hanover Township | PA |
| 2133 | Kingston | PA |
| 1584 | Nanticoke | PA |
| 1188 | Old Forge | PA |
| 2729 | Pittston | PA |
| 1585 | Plymouth | PA |
| 1588 | Plymouth | PA |
| 1091 | Sayre | PA |
| 1593 | Scranton | PA |
| 1611 | Scranton | PA |
| 6790 | Scranton | PA |
| 1583 | Shickshinny | PA |
| 2565 | Towanda | PA |
| 1617 | Tunkahannock | PA |
| 1591 | Wilkes-Barre | PA |
| 5879 | Wind Gap | PA |
| 4244 | Dunbar | WV |
| 3391 | Huntington | WV |
| 3480 | Huntington | WV |
| 4419 | Huntington | WV |
| 4425 | Huntington | WV |
| 6350 | Kenova | WV |
| 10566 | Milton Way | WV |
| 6274 | Parkersburg | WV |
| 6281 | Parkersburg | WV |
| 6306 | Saint Albans | WV |
| 7124 | Teays Valley | WV |

18. Relator worked first for approximately one year for Pennsylvania CVS Pharmacy LLC as a floater pharmacist in the Northeast Pennsylvania Region (March 2007 – February 2008); then for six and a half years as a staff pharmacist in store #1617 operated by Pennsylvania CVS Pharmacy LLC in Tunkhannock, which is in northeastern Pennsylvania near Scranton (February 2008 – October 2014); then as a floater pharmacist for Ohio CVS Stores LLC and West Virginia CVS Pharmacy LLC in the Southern Ohio and West Virginia Region (October 2014 – February 2016); then as a staff pharmacist in store 6350 operated by West Virginia CVS Pharmacy LLC in Kenova, West Virginia, which is located at the junction of Ohio, Kentucky and West Virginia (February 2016 – July 2016); then as a staff pharmacist in store #9242 operated by Long's Drug Store California LLC in Mission Viejo, CA, which is in southern California between Los Angeles and San Diego (August 2016 – December 2016); and as a pharmacy manager in the same store operated by Long's Drug Store California LLC in Mission Viejo, California. He presently works as a staff pharmacist at a store operated by Long's Drug Store California in Irvine, California.

**Plaintiff United States of America**

19. Relator brings Count 1 of this action on behalf of the United States pursuant to the *qui tam* provisions of the federal FCA, 31 U.S.C. §§ 3729–33.

20. On behalf of the United States, Relator seeks recovery for damages to federally-funded health insurance programs from the Defendants' [redacted] eye drop dispensing schemes, set forth above and below. In particular, Relator alleges damages to the Medicare Part D program, established under Title XVIII of the Social Security Act; the federal-state Medicaid program's drug benefit program, established under Title XIX of the Social Security Act; the Federal Employees Health Benefits Plan ("FEHBP"), established under 5 U.S.C §§ 8901–14; the U.S. Department of Defense TRICARE and CHAMPUS health care programs, established

pursuant to 10 U.S.C. § 1071 *et seq.*; the U.S. Department of Veteran's Affairs Health Benefits programs, established pursuant to 38 U.S.C. § 1701 *et seq.,* and the workers' compensation program administered by the U.S. Department of Labor.

**State Plaintiffs**

21. Relator brings Counts 2 thorough 36 of this action on behalf of the states of Alaska, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, Washington, the District of Columbia and certain Doe States (the "state Plaintiffs"). Specifically, he brings this action under the *qui tam* provisions of the following false claims laws and private insurance fraud prevention laws of the state Plaintiffs: the Alaska Medical Assistance False Claims and Reporting Act, Alaska Stat. Ann. § 09.58.010 *et seq.*; the California False Claims Act, Cal. Gov't. Code § 12650 *et seq.*; the California Insurance Frauds Prevention Act, Ca. Ins. Code § 1871.7; the Colorado False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 *et seq.*; the Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*; the Delaware False Claims and Reporting Act, 6 Del. Code § 1201 *et seq.*; the Florida False Claims Act, Fla. Stat. Ann. §68.081 *et seq.*; the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49- 4-168 *et seq.*; the Hawaii False Claims Act, Haw. Rev. Stat. § 46-171 *et seq.*; the Illinois False Claims Act, 740 Ill. Comp. Stat. 175/1 *et seq.*; the Illinois Insurance Claims Fraud Prevention Act, 750 ILCS 92/1 *et seq.,* the Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. § 5-11-5.5-1 *et seq.*; the Iowa False Claims Act, Iowa Code § 685.1 *et seq.*; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*; the Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-601 *et seq.*; the Massachusetts False Claims Act, Mass. Gen. Laws

Ch. 12, § 5A *et seq.*; the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*; the Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*; the Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*; the Nevada False Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*; the New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 *et seq.*; the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27- 14-1 *et seq.*; the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*; the North Carolina False Claims Act, N.C. Gen. Stat. §1-605 *et seq.*; the Oklahoma False Claims Act, Okla. Stat. Ann. tit. 63, § 5053 *et seq.*; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71- 5-181 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.001 *et seq.*; the Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 631 *et seq.*; the Virginia Fraud Against Taxpayer Act, Va. Code Ann. § 8.01-216.1 *et seq.*; the Washington Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.66.010 *et seq.*; the District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.* and future *qui tam* statutes adopted or amended by the Doe States to permit *qui tam* claims under the circumstances of this case.

22. On behalf of the state Plaintiffs, Relator seeks recovery for the damages to federal-state Medicaid programs, which are jointly funded by the United States and the state Plaintiffs, and to California and Illinois private insurers, that arose from the [redacted] eye drop overbilling schemes of the CVS Corporate Entities, [redacted] the Eye Drop Manufacturers, the Distributors and various CVS Operating Entities that operated in and submitted false claims to the Medicaid programs of those individual states.

**<u>The CVS Defendants</u>**

23. Defendant CVS Health Corporation, a Delaware corporation, is a publicly-traded company listed on the New York Stock Exchange under the ticker symbol "CVS." It had annual

net sales of $185 billion in 2017 and is one of the largest, if not the largest, pharmacy chains in the United States. Its immediate subsidiary in charge of pharmacy operations is CVS Pharmacy, Inc., a Rhode Island corporation which is headquartered in Woonsocket, Rhode Island. CVS Pharmacy, Inc. directly operates CVS stores in a few states and indirectly operates stores in many other states through approximately 82 subsidiaries. CVS Health Corporation and CVS Pharmacy, Inc. are referred to in this Complaint as the CVS Corporate Entities.

24. Defendants Alabama CVS Pharmacy LLC, Alaska CVS Pharmacy LLC, American Drug Stores Delaware LLC, Arbor Drugs Inc., Arizona CVS Stores LLC, Arkansas CVS Pharmacy LLC, Asbury Evanston CVS LLC, Bergen Mall NJ CVS Inc., Big B Drugs Inc., Brown Recker CVS LLC, Busse CVS LLC, CareCenter Pharmacy LLC, Connecticut CVS Pharmacy LLC, CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, CVS 3264 Phoenix LLC, CVS 3268 Gilbert LLC, CVS 3745 Peoria LLC, CVS Albany LLC, CVS Bellmore Avenue LLC, CVS EGL Baseline Tempe AZ LLC, CVS Gilbert 3272 LLC, CVS Manchester NH LLC, CVS Of Pennsylvania, Inc., CVS Of Virginia Inc., CVS State Capital LLC, Delaware CVS Pharmacy LLC, Desert Eastern CVS LLC, District Of Columbia CVS Pharmacy LLC, Garfield Beach CVS, LLC, Georgia CVS Pharmacy LLC, German Dobson CVS LLC, Goodyear CVS LLC, Grand St. Paul CVS LLC, Henderson CVS LLC, Highland Park CVS LLC, Holiday CVS , LLC, Hook SuperX Inc., Idaho CVS Pharmacy LLC, Iowa CVS Pharmacy LLC, Kankakee Il CVS LLC, Kansas CVS Pharmacy LLC, Kentucky CVS Pharmacy LLC, Longs Drug Store California LLC, Louisiana CVS Pharmacy LLC, Main Street Pharmacy LLC, Maryland CVS Pharmacy LLC, Maryland Parkway CVS LLC, Michigan Chicago CVS LLC, Mississippi CVS Pharmacy LLC, Missouri CVS Pharmacy LLC, Montana CVS Pharmacy LLC, Nebraska CVS Pharmacy LLC, Nevada CVS Pharmacy LLC, New Jersey CVS Pharmacy LLC, North Carolina CVS Pharmacy LLC, Ohio CVS

Stores LLC, Oklahoma CVS Pharmacy LLC, Oregon CVS Pharmacy LLC, Pennsylvania CVS Pharmacy LLC, ProCare Pharmacy LLC, Puerto Rico CVS Pharmacy LLC, Rea And Derick Inc P 1835, Revco Discount Drug Centers Inc., Rhode Island CVS Pharmacy LLC, Senip CVS LLC, Sheffield Avenue CVS LLC, South Carolina CVS Pharmacy LLC, South Wabash CVS LLC, Tennessee CVS Pharmacy LLC, Thomas Phoenix CVS LLC, University Mesa CVS LLC, Utah CVS Pharmacy LLC, Vermont CVS Pharmacy LLC, Virginia CVS Pharmacy LLC, Warm Springs Road CVS LLC, Washington CVS Pharmacy LLC, West Jackson CVS LLC, West Virginia CVS Pharmacy LLC, Wisconsin CVS Pharmacy LLC, Woodlawn Chicago CVS LLC, and Woodward Detroit CVS LLC are all direct or indirect subsidiaries of CVS Health Corporation and CVS Pharmacy, Inc. They are referred to collectively in this Complaint as the CVS Operating Entities.

25. The CVS Operating Entities operate 9,800 retail locations in 49 states, the District of Columbia and Puerto Rico. At least two of the CVS Operating Entities, CVS Albany LLC and ProCare Pharmacy LLC, dispense prescription medications in this judicial district. Others dispense prescription medications in each of the other states named as Plaintiffs herein. The CVS Operating Entities are either organized under the laws of the states where they do business or registered to transact business in those states as foreign legal entities.

26. Each of the CVS Operating Entities has obtained a National Provider Identifier ("NPI") for each of the individual stores it operates. The CVS Operating Entities have also entered into a separate Provider Agreement for each of the individual stores they operate pursuant to which they have expressly certified compliance with all applicable laws and regulations for the federal healthcare programs and the state Medicaid programs they are authorized by their contracts to bill for dispensing prescription medications to program beneficiaries. Following is a list of the CVS Operating Entities showing the states in which each operates:

FILED UNDER SEAL

| CVS Operating Entities | States Where Operate |
|---|---|
| ALABAMA CVS PHARMACY, L L C | AL |
| ALASKA CVS PHARMACY LLC | AK |
| AMERICAN DRUG STORES DELAWARE LLC | ND |
| ARBOR DRUGS INC | MI |
| ARIZONA CVS STORES LLC | AZ |
| ARKANSAS CVS PHARMACY LLC | AR |
| ASBURY EVANSTON CVS LLC | IL |
| BERGEN MALL NJ CVS INC | NJ |
| BIG B DRUGS INC | GA |
| BROWN RECKER CVS LLC | AZ |
| BUSSE CVS LLC | IL |
| CARECENTER PHARMACY LLC | TX |
| CONNECTICUT CVS PHARMACY LLC | CN |
| CVS 2948 HENDERSON LLC | NV |
| CVS 2989 LAS VEGAS LLC | NV |
| CVS 3264 PHOENIX LLC | AZ |
| CVS 3268 GILBERT LLC | AZ |
| CVS 3745 PEORIA LLC | IL |
| CVS ALBANY LLC | NY |
| CVS BELLMORE AVENUE LLC | NY |
| CVS EGL BASELINE TEMPE AZ LLC | AZ |
| CVS GILBERT 3272 LLC | AZ |
| CVS MANCHESTER NH L L C | NH |
| CVS OF PENNSYLVANIA, INC | PA |
| CVS OF VIRGINIA INC | VA |
| CVS PHARMACY INC | TX, MA, NM, CO, SD, RI |
| CVS STATE CAPITAL LLC | ME |
| DELAWARE CVS PHARMACY LLC | DE |
| DESERT EASTERN CVS LLC | NV |
| DISTRICT OF COLUMBIA CVS PHARMACY LLC | DC |
| GARFIELD BEACH CVS , L L C | CA |
| GEORGIA CVS PHARMACY L L C | GA |
| GERMAN DOBSON CVS LLC | AZ |
| GOODYEAR CVS LLC | AZ |
| GRAND ST PAUL CVS L L C | MN |
| HENDERSON CVS LLC | NV |
| HIGHLAND PARK CVS L L C | IL |
| HOLIDAY CVS , L L C | FL |
| HOOK SUPERX INC | IL, IN |
| IDAHO CVS PHARMACY LLC | ID |
| IOWA CVS PHARMACY LLC | IA |
| KANKAKEE IL CVS LLC | IL |
| KANSAS CVS PHARMACY LLC | KS |
| KENTUCKY CVS PHARMACY LLC | KY |
| LONGS DRUG STORE CALIFORNIA LLC | CA, NV |
| LOUISIANA CVS PHARMACY , L L C | LA |
| MAIN STREET PHARMACY, LLC | MD, VA, NJ, PA, MA, TX |
| MARYLAND CVS PHARAMCY LLC | MD |
| MARYLAND PARKWAY CVS LLC | NV |
| MICHIGAN CHICAGO CVS LLC | IL |
| MISSISSIPPI CVS PHARMACY LLC | MS |
| MISSOURI CVS PHARMACY LLC | MO |
| MONTANA CVS PHARMACY LLC | MT |
| NEBRASKA CVS PHARMACY LLC | NE |
| NEVADA CVS PHARMACY LLC | NV |
| NEW JERSERY CVS PHARMACY LLC | NJ |
| NORTH CAROLINA CVS PHARMACY L L C | NC |
| OHIO CVS STORES LLC | OH |
| OKLAHOMA CVS PHARMACY L L C | OK |
| OREGON CVS PHARMACY LLC | OR |
| PENNSYLAVANIA CVS PHARMACY, L L C | PA |
| PROCARE PHARMACY LLC | OR, GA, AZ, MA, CA, RI, CO, WA, VA, NY, DC, PA, OH, FL, TX, NC, AL, SC |
| PUERTO RICO CVS PHARMACY LLC | PR |
| REA AND DERICK INC P 1835 | MD |
| REVCO DISCOUNT DRUG CENTERS INC | MD |
| RHODE ISLAND CVS PHARMACY LLC | RI |
| SENIP CVS LLC | NV |
| SHEFFIELD AVENUE CVS LLC | IL |
| SOUTH CAROLINA CVS PHARAMCY LLC | SC |
| SOUTH WABASH CVS LLC | IL |
| TENNESSEE CVS PHARMACY LLC | TN |
| THOMAS PHOENIX CVS LLC | AZ |
| UNIVERSITY MESA CVS LLC | AZ |
| UTAH CVS PHARMACY L L C | UT |
| VERMONT CVS PHARMACY LLC | VT |
| VIRGINIA CVS PHAMACY LLC | VA |
| WARM SPRINGS ROAD CVS LLC | NV |
| WASHINGTON CVS PHARMACY L L C | WA |
| WEST JACKSON CVS LLC | IL |
| WEST VIRGINIA CVS PHARMACY LLC | WV |
| WISCONSIN CVS PHARMACY LLC | WI |
| WOODLAWN CHICAGO CVS LLC | IL |
| WOODWARD DETROIT CVS LLC | MI |

27. Because each of the 44 stores in which Relator Zimniski has worked over the past 14 years employ the same CVS management and billing practices, training, electronic dispensing systems and electronic billing systems, Relator believes and therefore alleges that all 82 CVS Operating Entities employ the same fraudulent dispensing and billing practices described herein.

[redacted]

[redacted]

[redacted]

[redacted]

**The Eye Drop Manufacturer Defendants**

31. Defendant Alcon Laboratories, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 6201 South Freeway, Fort Worth, TX 76134.

32. Defendant Allergan, Inc. is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 2525 Dupont Drive, Irvine, California 92612.

33. Defendant Allergan Sales, LLC is a limited liability company organized and existing under the laws of the State of Delaware with a place of business at 5 Giralda Farms, Madison, New Jersey 07940.

34. Defendant Allergan USA, Inc. is a Delaware corporation having a principal place of business at Morris Corporate Center III, 400 Interpace Parkway, Parsippany, New Jersey 07054

35. Defendant Pfizer Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 235 East 42nd Street, New York, New York.

36. Defendant Bausch & Lomb Inc. is a corporation organized and existing under the laws of New York, with a place of business at 1400 North Goodman St., Rochester, New York 14609

37. Defendant Aerie Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 2030 Main Street, Suite 1500 Irvine, California 92614.

38. Defendant Merck & Co., Inc. is a corporation organized and existing under the laws of the State of New Jersey. Merck's principal place of business is at 126 E Lincoln Avenue, Rahway, New Jersey 07065

39. Defendant Merck, Sharp & Dohme (I.A.) Corp. is a corporation organized and existing under the laws of New Jersey, having its corporate offices and principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889

40. Defendant Akorn, Inc. is a corporation organized and existing under the laws of Louisiana, having a principal place of business at 1925 West Field Court, Suite 300, Lake Forest, Illinois 60045.

## The Distributor Defendants

41. Defendant Cardinal Health, Inc. is an Ohio corporation with its principal place of business in Dublin, Ohio. Cardinal distributes pharmaceuticals to retail pharmacies and institutional provider in all 50 states.

42. Defendant AmerisourceBergen Corporation is a Delaware corporation with its principal place of business in Chesterbrook, Pennsylvania. Amerisource distributes pharmaceuticals to retail pharmacies and institutional providers in all 50 states.

43. Defendant McKesson Corporation is a Delaware corporation with its principal place of business in San Francisco, California. McKesson distributes pharmaceuticals to retail pharmacies and institutional providers in all 50 states.

# IV. APPLICABLE LAW

## The Federal & State False Claims Acts

44. The Federal False Claims Act ("FCA") was originally enacted during the Civil War to deter unscrupulous military contractors. Congress substantially amended the FCA in 1986—and, again, in 2009 and 2010—to enhance the ability of the Government to recover losses sustained as a result of fraud against it.

45. The FCA creates liability for "any person who," among other things:

> knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).
>
> knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).
>
> conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G). 31 U.S.C. § 3729(a)(1)(C).
>
> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

46. The FCA provides that any person who violates the FCA "is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990…, plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, the civil monetary penalty is increased periodically, for example, it was increased in 2017 to a maximum of $21,916 for each violation. 31 U.S.C. § 3729(a)(1); 82 Fed. Reg. 9131, 9133 (Feb. 3, 2017).

47. The FCA further provides that "the terms 'knowing' and 'knowingly' – (A) mean that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1). The FCA does not require proof that the defendant specifically intended to commit fraud. Id. Unless otherwise indicated, whenever the word "knows" and similar words indicating knowledge are used in this Complaint, they mean "knowing" or "knowingly" as defined in the FCA.

48. The FCA provides that "the term 'claim' – (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that— (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government— (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

49. The FCA provides that "the term 'obligation' means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3). In the health care context, such as Medicare and Medicaid, the term "obligation" is further defined as "Any overpayment retained by a person after the deadline for reporting and returning the overpayment…is an obligation (as defined [in the FCA])", and an overpayment must be reported "By the later of …60 days after the date on which the overpayment was identified…or the date any corresponding cost report is due, if applicable." Patient Protection and Affordable Care Act, March 23, 2010 ("PPACA"), Pub. L. 111-148 (Mar. 23, 2010), Section 6404(a), codified at 42 U.S.C. § 1128J9(d). See also 42 U.S.C. § 1320a-7k(d).

50. The FCA provides that "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

51. The false claims laws of the state Plaintiffs are generally similar to and adapted from the federal FCA. Where differences exist between the federal and state acts, those differences are pled in the counts set forth under "Claims for Relief" below.

**The Federal Anti-Kickback Statute**

52. The Federal Anti-Kickback Statute (the "AKS"), Social Security Act 1128(B)(b), codified at 42 U.S.C. § 1320a-7b(b), establishes criminal penalties for:

> (b) Illegal remunerations
> ...
> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
> ...
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, ...

53. Under this statute, health care providers may not even offer any remuneration, directly or indirectly, overtly or covertly, that is intended to induce the purchase, order or recommendation of any service or item that may be paid for, in whole or part, by a Federal health care program. 42 U.S.C. § 1320a-7b(b). The AKS is violated if one purpose of an arrangement is to induce referrals, even if other, legitimate purposes are also present.

54. Co-pay discount and waiver programs, discussed below in connection with manufacturer and distributor coupons and savings cards, constitute illegal kickbacks if paid to those covered under federally-funded healthcare programs. *See* OIG Special Advisory Bulletin, "Pharmaceutical Manufacturer Copayment Coupons" (Sept. 2014) at 1 ("Pharmaceutical manufacturers offer copayment coupons to insured patients to reduce or eliminate the cost of their out-of-pocket copayments for specific brand-name drugs. These coupons constitute remuneration offered to consumers to induce the purchase of specific items."); *see also* OIG Special Fraud Alert,

Special Fraud Alert, "Routine Waiver of Copayments or Deductibles Under Medicare Part B" 59 Fed. Reg. 63427-01 (Dec. 19, 1994) at 65375.

55. A claim that includes items or services resulting from a violation of the AKS constitutes a false or fraudulent claim for purposes of the FCA. 42 U.S.C. § 1320a-7b(g). Congress specifically amended the AKS on March 23, 2010, to clarify that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148 § 6402(f), 124 Stat. 119, 759 codified at 42 U.S.C. § 1320a-7b(g).

**The Civil Monetary Penalty Statute**

56. The Civil Monetary Penalty Statute, § 1128A(a)(5) of the Social Security Act [42 U.S.C. § 1320a–7a], authorizes the imposition of civil monetary penalties against health care providers that offer to or transfer remuneration to Medicare and Medicaid beneficiaries in order to influence their selection of a particular provider.

57. The Civil Monetary Penalty Statute defines "remuneration" to include transfers of items or services for free or for other than fair market value that a provider knows or should know is likely to influence such individual to order or to receive any item or service from a particular provider. 42 U.S.C. §1320a-7a(a)(5). See also 42 C.F.R. § 1003.102(b)(13).

58. The "should know" standard is met if a provider acts with deliberate ignorance or reckless disregard. No proof of specific intent is required. See 42 C.F.R. § 1003.101.

59. Violations of the Civil Monetary Penalty Statute can form the basis for violations of the False Claims Act.

**The California Insurance Fraud Prevention Act**

60. The California Insurance Fraud Prevention Act imposes liability in two situations. First, Subsection 1871.7 (a) exposes those procuring or steering clients to liability by making it unlawful to: "knowingly employ runners, cappers, steerers, or other persons to . . . procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer."

61. Payment of "kickbacks" or other valuable remuneration to a healthcare provider to procure patients to purchase drugs constitutes a violation of this "runners and cappers" clause. *See State ex rel. Wilson v. Superior Court*, 227 Cal.App.4th 579 (Cal. App. 2nd Dist. 2014).

62. Second, Section 1871.7 (b) of the Cal. Ins. Code provides in pertinent part that "[e]very person who violates any provision of this section [which would include a violation of Section 1871.7(a), above] or Section . . . 550 . . . of the Penal Code shall be subject, in additional to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in . . . a contract of insurance. . . ."

63. Section 550 (a) of the Cal. Penal Code makes it unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

> (1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.
>
> . . . .
>
> (5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.
>
> (6) Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

64. Section 550 (b) of the Cal. Penal Code makes it unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

> (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.
>
> (2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.
>
> (3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled.

65. Section 1871.7 (e) (1) of the Cal. Ins. Code states that any interested person may bring a civil action for a violation of Section 1871 for the person and for the State of California and Section 1871.7 (g) (1) (A) (iii) allows the person bringing the action to recover reasonable attorney's fees, costs and expenses, plus 30% to 50% of the net recovery.

**<u>The Illinois Insurance Claims Fraud Prevention Act</u>**

66. The Illinois Insurance Claims Fraud Prevention Act ("ICFPA") imposes liability in two situations. First, Subsection 92/5(a) exposes those offering, paying or receiving kickbacks or other remuneration to liability by making it unlawful to:

> knowingly offer or pay any remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer.

This provision is substantively equivalent to the federal Anti-Kickback Statute and Section 1871.7(a) of the California Insurance Fraud Prevention Act.

67. Subsection 92/5(b) creates a private cause of action against any person who violates the Illinois criminal code provisions relating to insurance fraud. 720 ILCS 5/17-10.5(a)(1) and (e)(1) provide that a person commits criminal insurance fraud when (s)he:

> knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company…by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company…intending to deprive the insurance company…of the use and benefit of that property.

68. Those committing fraud on a private entity under 740 ILCS 92/5 shall, in addition to any other penalties, be subject to penalties in the amount of $5,000-$10,000 for each fraudulent claim in which a person participated, "plus an assessment of not more than 3 times the amount of each claim for compensation." 740 ILCS 92/5(b).

69. Section 92/15(a) states that any interested person may bring a civil action for a violation of the Act for the person and for the State of Illinois and Section 92/25 allows the person bringing the action to recover reasonable attorney's fees, costs and expenses, plus 30% to 40% of the proceeds of the action.

## V. GOVERNMENT HEALTH PROGRAMS' COVERAGE OF PRESCRIPTION DRUGS

### Medicare Part D

70. Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., establishes the Health Insurance for the Aged and Disabled Program, popularly known as Medicare. A person generally is eligible for Medicare coverage if they are 65 years or older, if they have End Stage Renal Disease, or if they are disabled. Among other things, Medicare covers a portion of the costs of certain outpatient medications. Reimbursement for Medicare claims is made by the United

States through the Center for Medicare & Medicaid Services ("CMS"), an agency within the Department of Health & Human Services.

71. In 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), Pub. L. 108-173, 117 Stat. 2066, which established a voluntary prescription drug benefit program for Medicare enrollees known as "Medicare Part D." An individual is eligible to enroll in Part D if he or she lives in the service area of a Part D plan and is entitled to Medicare benefits under Part A or is enrolled under Part B. 42 U.S.C. § 1395w-101(a)(3)(A); 42 C.F.R. § 423.30(a). With a few limited exceptions, Medicare did not cover outpatient prescription drugs before the MMA was passed. The new Part D benefits program became effective January 1, 2006. 42 U.S.C. § 1395w- 101(a)(2).

72. Medicare Part D pays for certain outpatient prescription drugs, but only when they are dispensed pursuant to a prescription in accordance with applicable federal and state law. Specifically, Medicare part D covers those drugs (other than drugs reimbursable under Medicare Part A or Part B) that may be dispensed only upon a prescription and that are described in the payment provision of the Medicaid statute. See 42 U.S.C. § 1395w-102(e) (defining "Covered Drug" by reference to 42 U.S.C. § 1396r- 8(k)(2), which defines "Covered Outpatient Drug" for the purposes of Medicaid). As described more fully below, the Medicaid payment provisions restrict payment to reimbursement for drugs that, among other things, "may be dispensed only upon prescription," 42 U.S.C. § 1396r-8(k)(2), and define the term "prescribed drug" to include only those drugs that are "(1) [p]rescribed by a physician or other licensed practitioner of the healing arts within the scope of his professional practice as defined and limited by Federal and State law; (2) [d]ispensed by licensed pharmacists and licensed authorized practitioners in accordance with the state Medical Practice Act; and (3) [d]ispensed by the licensed pharmacist or

practitioner on a written prescription that is recorded and maintained in the pharmacist's or practitioner's records." 42 C.F.R. § 440.120(a) (interpreting and implementing 42 U.S.C. § 1396r-8(k)(2)).

73. To administer the Part D program, CMS contracts with private entities known as Part D "plan sponsors" to provide Part D benefits to beneficiaries. As a condition of receiving Part D funds, the plan sponsors must agree to comply with the applicable requirements and standards of the Part D program, as well as the terms and conditions of payment governing the Part D program. 42 U.S.C. § 1395w-112. Plan sponsors must also certify in their contracts with CMS that they agree to comply with all federal laws and regulations designed to prevent fraud, waste, and abuse. 42 C.F.R. § 423.505(h)(1).

74. CMS also mandates that the Part D sponsors affirmatively require the pharmacies in their networks to agree by contract to perform services in a manner that is consistent with and complies with the Part D sponsor's contractual obligations; and to comply with all applicable federal laws, regulations, and CMS instructions, and with all federal laws and regulations designed to prevent fraud, waste, and abuse. 42 C.F.R. § 423.505(i)(4)(iii), (v). These applicable laws and regulations include, among other things, the provisions of the Social Security Act (cited above) that specify the meaning of the term "prescribed drug" when used in the context of claiming benefits from the Medicaid or Medicare program.

75. Further, CMS requires that the Part D plan sponsors require the pharmacies in their networks to "comply with minimum standards for pharmacy practice as established by the state." 42 C.F.R. § 423.153(c)(1); see also 42 C.F.R. § 423.505(b)(6) (requiring the contracts between CMS and Part D sponsors to mandate compliance with 42 C.F.R. § 423.153(c)(1)).

Federal Reimbursement for Part D Pharmacy Claims

76. Payment for drugs under Medicare Part D involves a multistep electronic claims process. First, when a pharmacy such as a CVS retail pharmacy dispenses a drug to a Medicare Part D beneficiary, it submits an electronic claim to the beneficiary's Part D plan sponsor, often through a Pharmacy Benefits Manager on contract with the Part D plan. The pharmacy's claim expressly represents that the drug for which reimbursement is being requested was dispensed upon a prescription, that the pharmacy is billing the Medicare Part D program, and that the pharmacy understands that federal and state funds will be used to pay the claim. If and when it reimburses the claim, the Part D plan notifies CMS that a drug has been purchased and dispensed through a document called a Prescription Drug Event ("PDE") record. The PDE includes 37 fields of data about the billed-for drug, including information about the pharmacy where the prescription was filled, the prescriber, the quantity and days' supply, and whether the drug is "covered" under the Part D benefit.

77. Rather than reimbursing PDEs on a claim-by-claim basis, CMS makes three types of prospective payments to the Part D plan sponsors based on the sponsors' approved bids: (1) a direct subsidy designed to cover the sponsor's cost of providing the benefits; (2) a low-income cost-sharing subsidy; and (3) a reinsurance subsidy. The direct subsidy (a monthly capitated payment) is paid to the Part D plan sponsor in the form of advance monthly payments equal to the Part D plan's standardized bid, risk-adjusted for health status as provided in 42 C.F.R. § 423.329(b), minus a monthly beneficiary premium as determined in 42 C.F.R. § 423.315(b). In other words, CMS pays a monthly sum to the Part D plan sponsor for each Part D beneficiary enrolled in the plan based on the anticipated costs of treating the patient—costs that were identified in the plan's bid. CMS also makes payments to the Part D plan sponsor to subsidize cost-sharing, such as premiums,

by certain low-income, subsidy-eligible individuals as provided in 42 C.F.R. §§ 423.780 and 423.782. Finally, the reinsurance subsidy is paid to the Part D plan sponsor to cover the government's share of the drug costs above an enrollee's catastrophic threshold.

78. After the close of the plan year, CMS uses the PDE data to determine the Part D sponsor's actual allowable costs. CMS then performs a reconciliation that compares the prospective payments made to the Part D sponsor to the Part D sponsor's actual allowable costs. Based on this reconciliation, CMS calculates final payments and risk- sharing amounts.

79. Payments to a Part D plan sponsor are conditioned on providing the information to CMS that is necessary for CMS to administer the Part D program and make payments to Part D plan sponsors for qualified prescription drug coverage. 42 C.F.R. § 423.322. CMS's instructions for the submission of Part D prescription PDE claims data state that the data elements of a PDE constitute "information . . . necessary to carry out this subpart" and that CMS relies on the information in all 37 data elements of a PDE record to process payments and validate claims. *See* CMS, Updated Instructions: Requirements for Submitting Prescription Drug Event Data (PDE) (April 27, 2006), *available at* https://www.cms.gov/Medicare/Prescription-Drug-Coverage/DrugCoverageClaimsData/downloads/PDEGuidance.pdf.

80. Part D sponsors who fail to submit required claims-level information contained in the PDE to CMS risk having to return monthly payments to CMS during reconciliation. *See* 42 C.F.R. § 423.343(b), (c)(2), (d)(2). In addition, Part D sponsors are responsible for correcting submitted PDE data that they determine to be erroneous. *See* Updated Instructions, *supra*, at 4.

81. Federal regulations require that the Part D plan sponsor, as a condition of receiving monthly advance payments from CMS, certify to the accuracy, completeness, and truthfulness of the PDE data, and all other data submitted in support of CMS's decisions on payment. 42 C.F.R.

§ 423.505(k)(1). Likewise, the network pharmacies that submit claims data to Part D plans must certify to the accuracy, completeness, and truthfulness of that data and acknowledge that it will be used for the purpose of seeking federal funds. 42 C.F.R. § 423.505(k)(3).

**TRICARE/CHAMPUS & DOL**

82. The United States provides medical care, including pharmacy benefits, to certain current and former members of the armed services and their dependents through the TRICARE and CHAMPUS programs. See 10 U.S.C. §§ 1071, 1074g; 32 C.F.R. § 199.21. Under these programs, TRICARE and CHAMPUS beneficiaries have access to a uniform formulary of prescription drugs, which are defined as drugs that by law require a physician's or dentist's prescription. *See* 10 U.S.C. § 1074g; 32 C.F.R. §§ 199.2, 199.21. TRICARE and CHAMPUS coverage extends only to medically necessary services. 32 C.F.R. § 199.4(a)(1)(i). Pharmacy claims for prescriptions filled by TRICARE and CHAMPUS beneficiaries must accurately state the days' supply dispensed. *See* TRICARE Standard Handbook, at 20 (November 2014).[1] Similarly, the workers' compensation programs administered by the Department of Labor provide coverage for pharmacy services when they are medically necessary.

**VA Health Benefits Programs**

83. Through the VA, the United States offers medical benefits to qualified veterans. *See* 38 U.S.C. § 1701; 38 C.F.R. § 17.38(a). These medical benefits include the prescription drugs available under the VA's national formulary system. 38 C.F.R. § 17.38(a)(1)(iii). VA Health Benefits cover medical services only if "it is determined by appropriate healthcare professionals that the care is needed to promote, preserve, or restore the health of the individual and is in accord

[1] Available at http://www.tricare.mil/~/media/Files/TRICARE/Publications/Handbooks/TSE_HBK.ashx.

with generally accepted standards of medical practice." *Id.* § 17.38(b). Electronic claims submitted by non-VA pharmacies for medication reimbursement must include the days' supply of medication dispensed. *See Electronic Claims–Information for Providers*, VA.gov (June 17, 2015), http://www.va.gov/PURCHASEDCARE/programs/providerinfo/provider_info_elecClaims.asp (requiring use of National Council for Prescription Drug Programs ("NCPDP") telecommunications standards when submitting electronic claims); *infra* at 22 (discussing the NCPDP requirements, which include days' supply).

**The Federal Employee Health Benefits Program**

84. To provide health insurance benefits to federal employees, the United States Office of Personnel Management contracts with qualified carriers to offer federal employees a range of health insurance plans. *See* 5 U.S.C. § 8902; *FEHB Program Handbook*, OPM.gov (June 16, 2014), http://www.opm.gov/healthcare-insurance/healthcare/reference-materials/fehb-handbook/. All FEHBP plans provide prescription drug coverage. *See FEHB Program Handbook*, *supra*, http://www.opm.gov/healthcare-insurance/healthcare/reference-materials/reference/health-plans.

**Medicaid**

Federal Medicaid Law

85. Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, establishes the joint federal-state Medicaid program created to enable the states to implement medical assistance programs, primarily for the poor and disabled. The United States funds and oversees the Medicaid program through CMS. The state Plaintiffs participate in the Medicaid program, under which they pay for pharmaceutical drugs [redacted] in certain circumstances for Medicaid

beneficiaries. Reimbursement for covered drugs is made by each state's Medicaid program agency, which, in turn, seeks reimbursement for a portion of its expenditures from the federal government.

86. The federal government covers the costs of medications under the Medicaid program only if the drugs are "prescribed drugs," *i.e.*, medications which may be "dispensed only upon prescription." *See* 42 U.S.C. § 1396r-8(k)(2). The term "prescribed drug" is defined by regulation to include drugs that are: "(1) Prescribed by a physician or other licensed practitioner of the healing arts within the scope of this professional practice as defined and limited by Federal and State law; (2) Dispensed by licensed pharmacists and licensed authorized practitioners in accordance with the State Medical Practice Act; and (3) Dispensed by the licensed pharmacist or practitioner on a written prescription that is recorded and maintained in the pharmacist's or practitioner's records." 42 C.F.R. § 440.120(a). Thus, the federal government pays for prescription medications only when they are dispensed in accordance with prescriptions that comply with state law.

87. Federal law and regulations require that any health care provider who furnishes health care services that may be reimbursed under Medicaid must ensure that, to the extent of his or her authority, those services are provided "only when, and to the extent, medically necessary" and are "supported by evidence of medical necessity." *See* 42 U.S.C. § 1320c-5(a); 42 C.F.R. § 1004.10.

<u>State Medicaid Coverage Requirements: Prescriptions and Dispensing</u>

88. Most state Medicaid programs limit coverage to services that are medically necessary. *See, e.g.*, Cal. Code Regs. tit. 22, § 51303(a) (limiting coverage to "reasonable and necessary" services); Fla. Admin. Code Ann. r. 59G-1.035 (covering only medically necessary services); 130 Mass. Code Regs. § 450.204 ("The MassHealth agency will not pay a provider for services that are not medically necessary . . . ."); 18 N.Y. Comp. Codes & Regs. § 500.1(b) (limiting coverage to "medically necessary and appropriate services").

89. In addition, to ensure that they will be able to obtain federal reimbursement for a portion of their expenditures, the state Medicaid programs likewise cover the costs of medication only when such medication is dispensed "on a prescription," *i.e.*, in conformity with the instructions of a health care practitioner regarding not only the drug name and strength, but also the quantity of medication to be consumed over a set period of time. *See, e.g.*, Florida Medicaid, Prescribed Drug Services Coverage, Limitations and Reimbursement Handbook, Ch. 2, at 3 (July 2014) (stating that "Medical and pharmacy boards agree that a prescription's authorization is for the total quantity and duration on the prescription unless specific restriction on the quantity per dispensing are indicated on the prescription); Georgia Dep't of Cmty. Health, Policies and Procedures for Pharmacy Services § 602.4 (Apr. 1, 2017) ("Both the exact quantity and the day supply must be billed to Georgia Medicaid based on the metric decimal quantity prescribed and the prescriber's exact written directions, **but it cannot go over what the plan allows (30 days supply).** The billing system does not read the directions submitted, only the day's supply/quantity dispensed. . . . . Quantities Dispensed: Always submit the quantity prescribed, and submit the **exact** calculation of days supply per the Prescriber's dosing instructions.") (emphasis original);[2] Illinois Medicaid, Handbook for Pharmacy Services, Ch. P-204.4 (March 2016) ("Drugs shall, in no event, be dispensed more frequently or in larger amounts than the prescriber ordered without direct prescriber authorization by way of a new prescription order.");[3] Md. Code Regs. 10.03.03.05 ("Prescriptions shall be dispensed at the lower of the quantity prescribed or the maximum days' supply allowed . . . ."); Michigan Dep't of Health and Human Services, Medicaid Provider Manual

---

[2] *Available at* http://www.gpha.org/wp-content/uploads/2017-04_Medicaid-Pharmacy-Manual-Part-II.pdf .

[3] *Available* at https://www.illinois.gov/hfs/SiteCollectionDocuments/p200.pdf.

– Pharmacy § 11.1 (Apr. 1, 2019);[4] Minnesota Department of Human Services, Pharmacy Services Provider Manual (Sept. 7, 2018) ("Dispense a prescribed drug in the quantity specified on the prescription unless the pharmacy is using unit dose dispensing or the specified quantity is not available in the pharmacy when the prescription is dispensed.");[5] Nevada Medicaid and Nevada Check Up Pharmacy Manual, § 3.1 (May 27, 2019) ("Prescriptions must be dispensed pursuant to the orders of a physician or legally authorized prescriber.");[6] N.Y. State Medicaid Program, Pharmacy Manual Policy Guidelines, at 4 (Version 2019-1, Feb. 2019) ("Quantities for prescription drugs shall be dispensed in the amount prescribed.");[7] Rhode Island Medicaid Provider Manual – Pharmacy, Pharmacy Coverage Policy (stating that "[a]ll medication is dispensed on the basis of a written prescription from the prescribing provider" and for "maintenance" medications [redacted] "[t]he original prescription may be dispensed in the quantity that the prescribing provider indicates on the prescription");[8] Texas Vendor Drug Program, Pharmacy Provider Procedure Manual § 2.5 (May 2018) ("Providers must dispense the quantity prescribed or ordered by the prescriber . . . .");[9] Virginia Medicaid Pharmacy Manual, Ch. 4, at 1 (rev. Oct. 1, 2017) (stating that Virginia's Medicaid program "will pay for a maximum of a 34-day supply of medication per member in accordance with the prescriber's orders and subject to the Board of Pharmacy

---

4 *Available at* http://www.mdch.state.mi.us/dch-medicaid/manuals/MedicaidProviderManual.pdf.

5 *Available at* http://www.dhs.state.mn.us/main/idcplg?IdcService=GET_DYNAMIC_CONVERSION&RevisionSelectionMethod=LatestReleased&dDocName=id_008992.

6 *Available at* https://www.medicaid.nv.gov/Downloads/provider/NV_Pharmacy_Manual.pdf

7 *Available at* https://www.emedny.org/ProviderManuals/Pharmacy/PDFS/Pharmacy_Policy_Guidelines.pdf.

8 *Available at* http://www.eohhs.ri.gov/ProvidersPartners/ProviderManualsGuidelines/MedicaidProviderManual/Pharmacy/PharmacyCoveragePolicy.aspx.

9 *Available at* https://www.txvendordrug.com/sites/txvendordrug/files/docs/manuals/drug-policy.pdf

regulations");[10] Washington Apple Health, Prescription Drug Program Provider Guide, at 20 (July 1, 2018) ("The following practices constitute an abuse of the program and a misuse of taxpayer dollars: . . . Excessive filling – Excessive filling consists of billing for an amount of a drug or supply greater than the prescribed quantity.").[11]

90. The state Medicaid programs also require pharmacies wishing to bill and obtain payment from Medicaid to abide by all applicable federal and state laws. *See, e.g.*, Medi-Cal, Drug Medi-Cal Provider Agreement, at 2, 8 (rev. 5/17) (stating that providers billing Medi-Cal, the state Medicaid program, must agree to comply with all "federal laws and regulations governing and regulating Medicaid providers");[12] Fla. Stat. § 409.907(1) (stating that Florida's Medicaid program covers only those goods and services provided in compliance with requirements relating to licensure and applicable federal and state law); Ill. Adm. Code tit. 89, § 140.12(d) (stating that Medicaid pays for goods and services only if providers comply with applicable federal and state laws); Mass. Gen. Laws. Ch. 118E, § 36(4) (stating that providers participating in MassHealth, the state Medicaid program, must comply with "all laws, rules and regulations governing the operation of the program"); eMedNY, New York State Medicaid Enrollment Form, at 8 (rev. 01/19) (stating that "[a]s a Medicaid Provider you agree to abide by all applicable Federal and State laws").[13]

91. In turn, state laws governing the practice of pharmacy require that medication may be dispensed only upon a prescription that states the physician's "directions for use," including the

---

[10] *Available at* https://www.virginiamedicaid.dmas.virginia.gov/ECMPdfWeb/ECMServlet/Documentationmanuals/PC4/chapterIV_rx.

[11] *Available at* https://www.hca.wa.gov/assets/billers-and-providers/prescription-drug-bi-20180701.pdf.

[12] *Available at* https://files.medi-cal.ca.gov/pubsdoco/Publications/masters-other/provappsenroll/24enrollment_DHCS6009.pdf.

[13] *Available at* https://www.emedny.org/info/ProviderEnrollment/ProviderMaintForms/436801_PRACT_FORM_PractionerEnrlForm.pdf.

quantity to be taken by the patient on a daily basis. *See, e.g.*, Cal. Bus. & Prof. Code § 4040(a)(1)(B) (prescription must include "[t]he name and quantity of the drug or device prescribed and the directions for use"); Fla. Stat. § 456.42(1) (requiring that a "written prescription for a medicinal drug issued by a health care practitioner" must contain "the quantity of the drug prescribed" and "the directions for use of the drug"); 105 Mass. Code Regs. § 721.020 (stating that every prescription "shall contain . . . the quantity of dosage units" prescribed and "directions for use, including any cautionary statements required"); 225 Ill. Comp. Stat. 85/3(e) (stating that a valid prescription must specify both quantity and directions for use); N.Y. Comp. Codes R. & Regs. tit. 8, § 29.7(a)(1) (pharmacists may not in the course of professional conduct "[d]ispens[e] a written prescription which does not bear . . . the . . . quantity of the drug prescribed" or the "directions for use").

92. Many states' Medicaid regulations and program instructions also limit the number of "days' supply" that Medicaid will pay for at a time. *See, e.g.*, Md. Code Regs. 10.03.03.05 ("Prescriptions shall be dispensed at the lower of the quantity prescribed or the maximum days' supply allowed . . . . ");130 Mass. Code Regs. § 406.411(D)(1) ("The MassHealth agency requires that all drugs be prescribed in a 30-day supply, unless the drug is available only in a larger minimum package size . . . ."); Virginia Medicaid Pharmacy Manual, Ch. 4, at 1 (rev. Oct. 1, 2017) (stating that Virginia's Medicaid program "will pay for a maximum of a 34-day supply of medication per member in accordance with the prescriber's orders and subject to the Board of Pharmacy regulations").[14]

<u>Submitting Claims for Drugs Covered by State Medicaid Programs</u>

[14] *Available at* https://www.virginiamedicaid.dmas.virginia.gov/ECMPdfWeb/ECMServlet/Documentationmanuals/PC4/chapterIV_rx.

93. Pharmacies enrolled as providers in state Medicaid programs must submit claims in accordance with the state Medicaid programs' policies and procedures.

94. For claims submitted electronically, the Health Insurance Portability and Accountability Act ("HIPAA") requires that pharmacies and state Medicaid programs use the HIPAA-compliant National Council for Prescription Drugs Program ("NCPDP") Telecommunication Standard for electronic claim submission. *See* 42 U.S.C. §§ 1320d-1(a)(3), 1320d-2(a)(2). The Telecommunication Standard consists of an array of defined data fields about the drug claim, including a field called "days' supply," in which the pharmacy is supposed to state the "estimated number of days that the prescription will last." *See* NCPDP Reference Manual, Chapter 3: Flat File Format, at 3-38 (Oct. 2005).[15] In the states at issue in this case, the NCPDP field for "days' supply" is always required. *See, e.g.*, California Medicaid Management Information System, NCPDP Standard Payer Sheet, at 4 (Aug. 2018);[16] MassHealth, Pharmacy Online Processing System (POPS) Billing Guide, at 8 (May 2017);[17] eMedNY, Standard Companion Guide Transaction Information, at 19 (Dec. 28, 2018).[18]

95. Likewise, the states in this case that permit paper claims instruct pharmacies to state the days' supply dispensed on the claim. *See, e.g.*, Medi-Cal, Pharmacy Claim Form (30-1) Completion, at 8–9

---

[15] *Available at* https://www.cms.gov/Medicare/Billing/ElectronicBillingEDITrans/downloads/NCPDPflatfile.pdf .
[16] *Available at* https://files.medi-cal.ca.gov/pubsdoco/Publications/masters-other/5010/27045_NCPDP_Payer_Sheet_V5.3.pdf.
[17] *Available at* https://www.mass.gov/files/documents/2017/01/mz/pops-billing-guide.pdf.
[18] *Available at* https://www.emedny.org/hipaa/5010/transactions/NCPDP_D.0_Companion_Guide.pdf.

(Sept. 2018);[19] Illinois Department of Healthcare and Family Services, Handbook for Pharmacy Services, App'x P-1, at 4, 6 (Mar. 2016);[20] eMedNY, Billing Guidelines – Pharmacy, at 17 (June 28, 2013).[21]

96. Pharmacies certify the accuracy of the data they submit to state Medicaid programs, such as the "days' supply" stated on the claims form, both when they enroll as providers and when they sign up to bill state Medicaid programs electronically. *See, e.g.*, Florida Medicaid Management Information Systems, Electronic Data Interchange Agreement, at 3 (Nov. 2013); Illinois Department of Healthcare and Family Services, Agreement for Participation in the Illinois Medical Assistance Program, at 2 (April 2014); MassHealth, Trading Partner Agreement, at 1 (Feb. 2011);[22] eMedNY/Medicaid Management Information System, Certification Statement for Provider Billing Medicaid, at 1 (Dec. 2010).[23]

97. Further, by enrolling as providers in state Medicaid programs, pharmacies also agree to follow all applicable program rules and regulations. *See, e.g.*, Drug Medi-Cal Provider Agreement, *supra*, at 2; Florida Medicaid Management Information Systems, Non-Institutional Medicaid Provider Agreement, at 1 (Aug. 2013);[24] Agreement for Participation in the Illinois Medical Assistance Program, *supra*, at 1; New York State Medicaid Enrollment Form, *supra*, at 1.

## VI. PRIVATE INSURANCE PLANS' COVERAGE OF PRESCRIPTION DRUGS IN CALIFORNIA AND ILLINOIS

---

19 *Available at* https://files.medi-cal.ca.gov/pubsdoco/publications/masters-mtp/part2/pcf30-1comp_p00.doc.

20 *Available at* http://www2.illinois.gov/hfs/SiteCollectionDocuments/p200a.pdf.

21 *Available at* https://www.emedny.org/ProviderManuals/Pharmacy/PDFS/Pharmacy_Billing_Guidelines.pdf.

22 *Available at* https://www.mass.gov/files/documents/2017/09/20/hipaa-trading-partner.pdf

23 *Available at* https://www.emedny.org/info/providerenrollment/ProviderMaintForms/490501_ETIN_CERT_Certification_Statement_Cert_Instructions_for_Existing_ETINs.pdf.

24 *Available at* https://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/Public%20Misc%20Files/MPA_Non-Inst.pdf.

98. Commercial or private insurers writing group and individual health insurance policies in California include, but are not limited to, Aetna, Cigna, Caremark, United Healthcare, Anthem Blue Cross, Blue Shield of California, Medco/Express Scripts and HealthNet (collectively, the "California Insurers").

99. Commercial or private insurers writing group and individual health insurance policies in Illinois include, but are not limited to, Aetna, Blue Cross/Blue Shield of Illinois, Cigna, Medical Associates Health Plan and United Health Care (collectively, the "Illinois Insurers").

100. Group and individual policies issued by California and Illinois Insurers typically provide coverage for prescription drugs only in the quantities prescribed by a physician and often limited the dispensing of such drugs to a 30-day supply unless dispensed by a mail-order pharmacy, in which case a 90-day supply may be permitted. Whether the quantify is limited or not, there is a data field in the NCPDP electronic claim form by which the pharmacy declares the number of days' supply that has been dispensed. Like government programs, the private insurers utilize this information to determine when a re-fill is premature.

[redacted]

[redacted]

| [redacted] | [redacted] |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

*FILED UNDER SEAL*

| | |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

*FILED UNDER SEAL*

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

*FILED UNDER SEAL*

[redacted]

[redacted]

[redacted]

[redacted]

*FILED UNDER SEAL*

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

*FILED UNDER SEAL*

[redacted]

[redacted] [redacted].

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

*FILED UNDER SEAL*

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]e

[redacted]

[redacted]

---

[redacted]

[redacted]

*FILED UNDER SEAL*

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

*FILED UNDER SEAL*

[redacted]

[redacted] [redacted]

[redacted] [redacted]

*FILED UNDER SEAL*

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

---

[redacted]

[redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

## IX. THE FRAUDULENT EYE DROP SCHEME

165. The second scheme in this case involves the dispensing of eye drop products that are packaged in 1.7, 2.5, 3, 5, 7.5, 8, 10, or 15mL boxes, such as, but not limited to the following:

| Medication Name | NDC (National Drug Code) | Package Size | Drop Size |
|---|---|---|---|
| Acular | 0023-2181-05 | 5 mL | 35 µL |
| Acular LS | 0023-9277-05 | 5 mL | 50 µL |
| Ketorolac Tromethamine | 60505-1003-1 | 5 mL | 35 µL |
| Ketorolac Tromethamine | 60505-1003-2 | 10 mL | 35 µL |
| Ketorolac Tromethamine | 61314-126-05 | 5 mL | 35 µL |
| Ketorolac Tromethamine | 61314-126-10 | 10 mL | 35 µL |
| Ketorolac Tromethamine | 17478-208-10 | 5 mL | 50 µL |
| Ketorolac Tromethamine | 17478-209-10 | 5 mL | 35 µL |
| Ketorolac Tromethamine | 17478-209-11 | 10 mL | 35 µL |
| Ketorolac Tromethamine | 17478-209-19 | 3 mL | 35 µL |
| Ketorolac Tromethamine | 47335-221-90 | 10 mL | 35 µL |
| Ketorolac Tromethamine | 47335-219-90 | 3 mL | 35 µL |
| Ketorolac Tromethamine | 47335-220-90 | 5 mL | 35 µL |
| Ketorolac Tromethamine | 65862-775-05 | 5 mL | 50 µL |
| ALOCRIL | 0023-8842-05 | 5 mL | 40 µL |
| Nedocromil Sodium | 17478-066-10 | 5 mL | 40 µL |
| ALPHAGAN P | 0023-9177-05 | 5 mL | 35 µL |
| ALPHAGAN P | 0023-9177-10 | 10 mL | 35 µL |

| | | | |
|---|---|---|---|
| ALPHAGAN P | 0023-9177-15 | 15 mL | 35 µL |
| ALPHAGAN P | 0023-9321-03 | 3 mL | 35 µL |
| ALPHAGAN P | 0023-9321-05 | 5 mL | 35 µL |
| ALPHAGAN P | 0023-9321-10 | 10 mL | 35 µL |
| ALPHAGAN P | 0023-9321-15 | 15 mL | 35 µL |
| Brimonidine | 17478-715-10 | 5 mL | 35 µL |
| Brimonidine | 17478-715-11 | 10 mL | 35 µL |
| Brimonidine | 17478-715-12 | 15 mL | 35 µL |
| Brimonidine Tartrate | 61314-143-05 | 5 mL | 35 µL |
| Brimonidine Tartrate | 61314-143-10 | 10 mL | 35 µL |
| Brimonidine Tartrate | 61314-143-15 | 15 mL | 35 µL |
| Brimonidine Tartrate | 61314-144-05 | 5 mL | 35 µL |
| Brimonidine Tartrate | 61314-144-10 | 10 mL | 35 µL |
| Brimonidine Tartrate | 61314-144-15 | 15 mL | 35 µL |
| Brimonidine Tartrate | 24208-411-05 | 5 mL | 35 µL |
| Brimonidine Tartrate | 24208-411-10 | 10 mL | 35 µL |
| Brimonidine Tartrate | 24208-411-15 | 15 mL | 35 µL |
| COMBIGAN | 0023-9211-03 | 2.5 mL | 35 µL |
| COMBIGAN | 0023-9211-05 | 5 mL | 35 µL |
| COMBIGAN | 0023-9211-10 | 10 mL | 35 µL |
| COMBIGAN | 0023-9211-15 | 15 mL | 35 µL |
| SIMBRINZA | 0065-4147-25 | 2.5 mL | 40 µL |

| | | | |
|---|---|---|---|
| SIMBRINZA | 0065-4147-27 | 8 mL | 40 µL |
| ALREX | 24208-353-05 | 5 mL | 50 µL |
| ALREX | 24208-353-10 | 10 mL | 50 µL |
| LOTEMAX | 24208-299-05 | 5 mL | 50 µL |
| LOTEMAX | 24208-299-10 | 10 mL | 50 µL |
| LOTEMAX | 24208-299-15 | 15 mL | 50 µL |
| Zylet | 24208-358-05 | 5 mL | 50 µL |
| Zylet | 24208-358-10 | 10 mL | 50 µL |
| AzaSITE | 17478-307-03 | 2.5 mL | 50 µL |
| AzaSITE | 17478-307-04 | 2.5 mL | 50 µL |
| Azopt | 0065-0275-10 | 10 mL | 50 µL |
| Azopt | 0065-0275-15 | 15 mL | 50 µL |
| Azopt | 0065-0275-25 | 2.5 mL | 50 µL |
| Bepreve | 24208-629-01 | 10 mL | 50 µL |
| Bepreve | 24208-629-02 | 5 mL | 50 µL |
| Besivance | 24208-446-05 | 5 mL | 37 µL |
| Bromfenac | 50383-249-71 | 1.7 mL | 50 µL |
| BromSite | 49708-754-41 | 5 mL | 50 µL |
| Prolensa | 24208-602-03 | 3 mL | 50 µL |
| ELESTAT | 0023-9201-05 | 5 mL | 35 µL |
| Epinastine | 17478-911-05 | 5 mL | 35 µL |
| Epinastine Hydrochloride | 60505-0584-1 | 5 mL | 35 µL |

| | | | |
|---|---|---|---|
| Epinastine Hydrochloride | 62756-329-90 | 5 mL | 35 µL |
| Epinastine Hydrochloride | 51991-836-75 | 5 mL | 35 µL |
| COSOPT | 17478-605-10 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 0591-2482-79 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 17478-514-11 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 50383-233-05 | 5 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 50383-233-10 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 60429-115-10 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 61314-030-01 | 5 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 61314-030-02 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 24208-486-05 | 5 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 24208-486-10 | 10 mL | 50 µL |
| Dorzolamide HCl and Timolol Maleate | 0527-1763-73 | 10 mL | 50 µL |
| Istalol | 24208-004-01 | 2.5 mL | 50 µL |
| Istalol | 24208-004-02 | 2.5 mL | 50 µL |
| Istalol | 24208-004-03 | 5 mL | 50 µL |
| Timolol GFS | 61314-224-05 | 5 mL | 50 µL |
| Timolol GFS | 61314-224-25 | 2.5 mL | 50 µL |
| Timolol GFS | 61314-225-05 | 5 mL | 50 µL |
| Timolol GFS | 61314-225-25 | 2.5 mL | 50 µL |
| Timolol Maleate | 60758-801-05 | 5 mL | 50 µL |
| Timolol Maleate | 60758-801-10 | 10 mL | 50 µL |

| | | | |
|---|---|---|---|
| Timolol Maleate | 60758-801-15 | 15 mL | 50 µL |
| Timolol Maleate | 60758-802-05 | 5 mL | 50 µL |
| Timolol Maleate | 60758-802-10 | 10 mL | 50 µL |
| Timolol Maleate | 50383-021-05 | 5 mL | 50 µL |
| Timolol Maleate | 50383-021-10 | 10 mL | 50 µL |
| Timolol Maleate | 50383-021-15 | 15 mL | 50 µL |
| Timolol Maleate | 24208-818-25 | 5 mL | 50 µL |
| Timolol Maleate | 24208-819-05 | 5 mL | 50 µL |
| Timolol Maleate | 68682-045-25 | 2.5 mL | 50 µL |
| Timolol Maleate | 60505-1005-1 | 5 mL | 50 µL |
| Timolol Maleate | 60505-1005-4 | 2.5 mL | 50 µL |
| Timolol Maleate | 61314-226-05 | 5 mL | 50 µL |
| Timolol Maleate | 61314-226-10 | 10 mL | 50 µL |
| Timolol Maleate | 61314-226-15 | 15 mL | 50 µL |
| Timolol Maleate | 61314-227-05 | 5 mL | 50 µL |
| Timolol Maleate | 61314-227-10 | 10 mL | 50 µL |
| Timolol Maleate | 61314-227-15 | 15 mL | 50 µL |
| Timolol Maleate | 68682-045-50 | 5 mL | 50 µL |
| Timolol Maleate | 17478-288-10 | 5 mL | 50 µL |
| Timolol Maleate | 17478-288-11 | 10 mL | 50 µL |
| Timolol Maleate | 17478-288-12 | 15 mL | 50 µL |
| Timolol Maleate | 17478-288-25 | 2.5 mL | 50 µL |

| | | | |
|---|---|---|---|
| Timolol Maleate | 17478-289-10 | 5 mL | 50 µL |
| Timolol Maleate | 17478-289-11 | 10 mL | 50 µL |
| Timolol Maleate | 17478-289-12 | 15 mL | 50 µL |
| Timolol Maleate | 17478-289-25 | 2.5 mL | 50 µL |
| Timolol Maleate | 64980-513-01 | 10 mL | 50 µL |
| Timolol Maleate | 64980-513-05 | 5 mL | 50 µL |
| Timolol Maleate | 64980-513-15 | 15 mL | 50 µL |
| Timolol Maleate | 64980-514-01 | 10 mL | 50 µL |
| Timolol Maleate | 64980-514-05 | 5 mL | 50 µL |
| Timolol Maleate | 64980-514-15 | 15 mL | 50 µL |
| Timolol Maleate | 67877-229-11 | 10 mL | 50 µL |
| Timolol Maleate | 67877-229-15 | 15 mL | 50 µL |
| Timolol Maleate | 67877-229-55 | 5 mL | 50 µL |
| Timoptic | 24208-812-05 | 5 mL | 50 µL |
| Timoptic | 24208-813-05 | 5 mL | 50 µL |
| Timoptic | 24208-813-10 | 10 mL | 50 µL |
| Timoptic-XE | 24208-814-25 | 5 mL | 50 µL |
| Timoptic-XE | 24208-816-05 | 5 mL | 50 µL |
| LASTACAFT | 0023-4290-03 | 3 mL | 35 µL |
| Bimatoprost | 50383-908-05 | 5 mL | 35 µL |
| Bimatoprost | 50383-908-02 | 2.5 mL | 35 µL |
| Bimatoprost | 50383-908-07 | 7.5 mL | 35 µL |

| | | | |
|---|---|---|---|
| Bimatoprost | 60505-0583-1 | 5 mL | 35 µL |
| Bimatoprost | 60505-0583-4 | 2.5 mL | 35 µL |
| Bimatoprost | 68180-429-01 | 2.5 mL | 35 µL |
| Bimatoprost | 68180-429-02 | 5 mL | 35 µL |
| Bimatoprost | 68180-429-03 | 7.5 mL | 35 µL |
| Bimatoprost | 60505-0583-5 | 7.5 mL | 35 µL |
| Bimatoprost | 0781-6206-75 | 5 mL | 35 µL |
| Bimatoprost | 0781-6206-93 | 3 mL | 35 µL |
| LATISSE | 0023-3616-03 | 3 mL | 35 µL |
| LATISSE | 0023-3616-04 | 3 mL | 35 µL |
| LATISSE | 0023-3616-05 | 5 mL | 35 µL |
| LATISSE | 0023-3616-70 | 3 mL | 35 µL |
| LATISSE | 0023-3616-71 | 3 mL | 35 µL |
| LATISSE | 0023-3616-80 | 3 mL | 35 µL |
| LATISSE | 0023-3616-81 | 3 mL | 35 µL |
| LUMIGAN | 0023-3205-02 | 2.5 mL | 35 µL |
| LUMIGAN | 0023-3205-03 | 2.5 mL | 35 µL |
| LUMIGAN | 0023-3205-05 | 5 mL | 35 µL |
| LUMIGAN | 0023-3205-08 | 7.5 mL | 35 µL |
| MOXEZA | 0065-0006-03 | 3 mL | 50 µL |
| Moxifloxacin | 68180-422-01 | 3 mL | 38 µL |
| Moxifloxacin | 60505-0582-4 | 3 mL | 38 µL |

| | | | |
|---|---|---|---|
| Moxifloxacin | 17478-519-19 | 3 mL | 38 µL |
| Moxifloxacin | 65862-840-03 | 3 mL | 38 µL |
| Moxifloxacin | 0781-7135-93 | 3 mL | 38 µL |
| VIGAMOX | 0065-4013-03 | 3 mL | 38 µL |
| ILEVRO | 0065-1750-07 | 1.7 mL | 35 µL |
| ILEVRO | 0065-1750-14 | 3 mL | 35 µL |
| NEVANAC | 0065-0002-03 | 3 mL | 50 µL |
| Travatan Z | 0065-0260-02 | 2.5 mL | 30 µL |
| Travatan Z | 0065-0260-05 | 5 mL | 30 µL |
| Travatan Z | 0065-0260-25 | 2.5 mL | 30 µL |
| Travoprost | 49884-044-48 | 2.5 mL | 30 µL |
| Travoprost | 49884-044-63 | 5 mL | 30 µL |
| Gatifloxacin | 50383-189-02 | 2.5 mL | 40 µL |
| Gatifloxacin | 68180-435-01 | 2.5 mL | 40 µL |
| Gatifloxacin | 61314-672-25 | 2.5 mL | 40 µL |
| ZYMAXID | 0023-3615-25 | 2.5 mL | 40 µL |

166. Eye drops are designed to provide patients with an accurate and convenient way to administer the precise doses of ophthalmic medication directed by their physician. Each box comes pre-loaded with a plastic bottle containing a specific amount of drug designated in milliliters of medication. The bottle tips are manufactured to deliver the dose appropriate for the patient and each bottle can deliver multiple drops. Doses are administered by applying slight pressure or squeezing the plastic bottle and allowing a single drop to fall onto the treated eye. Unlike

traditional medications like tablets and capsules, an eye drop usually contains a preservative—it can be stored at room temperature for up to 28 days after the first use and some eye drops even longer. Unused bottles can be kept for up to a year.

167. The Eye Drop Manufacturers, such as Allergan (the maker of Acular and Alphagan), Bausch & Lomb (the maker of Alrex and Lotemax), and Akorn (the maker of AzaSite and Cosopt), sell them to pharmacies as individual boxes of various prefilled volume. Each box contains a specific amount denoted in mL of medication. Each eye drop's box is individually sealed and labeled with the drug's NDC and the eye drop's individual expiration date.

168. Eye drops make up a large and growing portion of the glaucoma treatment market, and, consequently, federal healthcare program payments for eye drops are substantial. For instance, in 2013, Medicare Part D beneficiaries incurred total costs of more than $2.4 billion for eye drops. And in 2016, Medicaid paid more than $133 million for eye drops made by the manufacturer Allergan. In New York, Medicaid reimbursements for eye drops range from $0.394 to $75.52per mL of eye drop, or $2.95 to $566 per 7.5 mL box.

169. Some non-CVS pharmacists commonly calculate the correct day supply and dispense eye drops in precise quantity to ensure correct billing of insurance. Inside the boxes, the eye drops are labelled with their NDC number and an expiration date that is the same as the expiration date stated on the box.

170. Federal health care programs pay for eye drops based on the number of milliliters of medication dispensed, not based on the number of boxes dispensed. See, e.g., New York State Department of Health., List of Medicaid Reimbursable Drugs (February 1, 2019) (setting a "Payment Rate Per Unit" of "$75.52037 per Milliliter" for Lumigan 0.01% eye drops); Texas Medicaid/CHIP Vendor Drug Program, Formulary Drug Search (February 1, 2019) (setting a

"Payment Rate Per Unit" of "$75.52037 per Milliliter" for Lumigan 0.01% eye drops); Washington State Healthcare Authority, Current NCPDP Billing Standards, at 2 (June 17, 2015) (stating that "Liquid Ophthalmic and Optic Products must be billed as the number of milliliters (ml) contained in the package according to manufacturer labeling.").

171. When a pharmacist receives a practitioner's order for eye drops, he or she must determine how much to dispense to comply with the practitioner's directions. To do so, the pharmacist must first multiply the patient's total daily dose by the days' supply to be dispensed. The days' supply to be dispensed will depend on any instructions on this issue found in the practitioner's order, any limits on days' supply in the patient's health insurance plan, and, in the case of CVS and many other retail pharmacies, a policy that encourages pharmacists to bill Medicare Part D for 90-day supplies of eye drops and other medication taken for chronic conditions. If a patient required four drops per day, a 30-day supply, properly determined, would be 120 drops. For the same patient, a 90- day supply, properly determined, would be 360 drops.

172. Each manufacturer has a unique drop size that cannot be altered without FDA approval, see 21 C.F.R § 314.70. Since FDA filings are publicly and widely available on the FDA's public website http://www.fda.gov, all the CVS Corporate Entities and CVS Operating Entities knew or should have known the drop sizes for each medication they dispensed. By failing to correctly calculate the drops size of each individual eye drops product, and by utilizing a generic formula of 15 drops per ml, it estimated 66 µL drop size for each and every eye drop CVS dispensed. This overestimation can, in the case of Travatan (30 µL),[34] calculate an entire bottle will be used up when in fact only 45% of the bottle should have been used.

---

[34] Available at: https://www.accessdata.fda.gov/drugsatfda_docs/nda/2014/204822Orig1s000PharmR.pdf

173. According to the billing chart in the Audit Tips document provided by the CVS Corporate Entities to their pharmacists, a patient utilizing four drops per day calculated at 15 drops per ml of the medication Travatan would need eight mL of Travatan to fulfill a 30-day supply. When correctly calculated utilizing the information provided by the manufacturer this prescription could be satisfied with a single 5mL box. Pursuant to the Audit Tips chart provided by the CVS Corporate Entities to their pharmacists, four drops per day requires using 10mL to fulfill a 30-day supply due to CVS rounding down the day supply to make it "fit" within the insurance company's maximum billable day supply (round down 37 days to 30 days). Because of the overestimation and rounding rules the CVS Corporate Entities would have their pharmacist bill 10mL of Travatan at a cost of $706.06 to NY Medicaid, when in fact this prescription could have been satisfied with 5mL costing NY Medicaid just $353.03

174. In the case of Medicare Part D, the excessive dispensing and billing often resulted from a CVS policy that encourages pharmacists dispensing eye drops and other medication for chronic conditions to bill Medicare Part D for 90 days at a time even if the prescriber has specified a lesser days' supply. Because a 90-day supply of eye drops, computed according to the doctor's directions for use, will rarely correspond to an exact multiple of a specific package size, CVS's policy, when combined with CVS's instructions and training against calculating drops per mL, means that a pharmacy often ends up dispensing excessive amounts to Medicare Part D beneficiaries. To be able to bill Medicare Part D for a supposed 90-day supply in conformity with corporate policy, the pharmacist is forced to triple the already "rounded up" prescribed quantity to a multiple of the eye drops package size and then misrepresent on the claim form that the amount dispensed is a 90-day supply. In most cases this calculation is not even done by the pharmacist; rather, the software will notify the prescriber of a patient being converted from a 30-day supply to

a 90-day supply that is three times the amount currently being dispensed if there are insufficient refills on an existing prescription to up-convert to a 90-day supply.

175. For example, if a patient is currently getting a prescription filled at five mL, a fax is generated by the computer asking the physician to prescribe 15 mL, or if the script is 10 mL the system asks for 30 mL as a 90-day supply. This is all done by the computer system in an automated process that never goes before the pharmacist for review before the fax is sent. The automated process looks at the existing prescription, triples it and sends it to the doctor as a 90-day request. This is normally done when a customer picks up his 30-day prescription at the register. A clerk asks if he would like 90 days and presses a button on the register and the computer does the rest. No calculation is ever done by a human. The computer just asks for three times what is currently designated as a 30-day supply.

176. In the case of a patient being treated with Travatan at four drops per day that currently is receiving 10 mL for a 30-day supply, the software will contact the prescriber alleging the patient wishes to receive a 90-day supply and 30 mL will be the sufficient quantity to fulfill that request. A quantity of 30 mL according to the manufacturer's stated 30 µL drop size would last that patient 247 days. Correctly calculated -- using the Eye Drop Manufacturer's stated 30 µL drop size – a dispensing of two five mL bottles of Travatan would last the patient 83 days, and even 15 mL (dispensed as three five mL bottles) would be more than sufficient to last the full 90 days. CVS's overestimation would cost NY Medicaid $2,200.68 when a properly calculated claim would have cost only $1,100.34.

177. Because of the policies and practices described above, the CVS Operating Entities have improperly dispensed, and falsely billed government health programs for vast quantities of eye drops that were not needed by patients; in each instance, the CVS Operating Entity in question

falsely represented the "days' supply" dispensed on the claim form, and falsely certified on the provider agreement or claim form that CVS was complying with government program rules that: i) restrict payment to medication dispensed on a prescription; and/or, ii) limit the days' supply that may be dispensed and billed for at one time. In doing so, the CVS Operating Entities submitted false claims to government health programs and made false records or statements material to false or fraudulent claims. For example:

- Patient 1-e-g (Government Healthcare Plan) received a prescription for one one drop of medication, instilled once daily to each eye with the Latanoprost product, *i.e.*, 180 drops of Latanoprost every 90 days, that CVS designated as CVS #09242, Rx # 969526. On October 5, 2017 a CVS pharmacy dispensed four bottles of drops, *i.e.*, 10 mL, or 328 drops, and falsely reported these amounts to the patient's Medicaid plan as a "90-day supply." This prescription could have been filled with 7.5 mL. Thus, the patient received 82 excess drops on this dispense. The patient then refilled the prescription on January 2, 2018 and subsequently transferred the prescription to CVS # 8891, Rx # 840644 and refilled the prescription on March 29, 2018 and August 2, 2018. Each time, the patient received four boxes of eye drops. The patient's Medicare plan paid $24.53 for each dispensing

- Patient 2-e-g (Government Healthcare Plan) received a prescription for one drop of medication, instilled twice daily to each eye with the Combigan product, *i.e.*, 120 drops of Combigan every 30 days, that CVS designated as CVS #09242, Rx # 1032995. On March 12, 2018, a CVS pharmacy dispensed three bottles of drops, *i.e.*, 15 mL, or 420 drops, and falsely reported these amounts to the patient's Medicaid plan as a "30-day supply." This prescription could have been filled with five mL. Thus, the patient received 280 excess drops on this dispense. The patient then refilled the prescription on July 25, 2018 and January 7, 2019. Each time, the patient

received three boxes of eye drops. The patient's Medicare plan paid $399.43, $399.43 and $390.17 respectively.

- Patient 3-e-g (Government Healthcare Plan) received a prescription for one drop of medication, instilled once daily to each eye with the Travatan Z product, *i.e.*, 60 drops of Travatan Z every 30 days, that CVS designated as CVS #09242, Rx # 989665. On November 27, 2017 a CVS pharmacy dispensed one bottle of drops, *i.e.*, five mL, or 166 drops, and falsely reported these amounts to the patient's Medicaid plan as a "30-day supply." This prescription could have been filled with 2.5 mL. Thus, the patient received 82 excess drops on this dispense. The patient then refilled the prescription on May 10, 2018, June 7, 2018 and July 3, 2018. Each time, the patient received one box, *i.e.*, five mL, of eye drops. The patient's Medicare plan paid $329.50 for each dispensing.

- Patient 4-e-g (Government Healthcare Plan) received a prescription for one drop of medication, instilled once daily to each eye with the Travatan Z product, *i.e.*, 60 drops of Travatan Z every 30 days, that CVS designated as CVS #09242, Rx # 1043649. On April 9, 2018 a CVS pharmacy dispensed one bottle of drops, *i.e.*, five mL, or 166 drops, and falsely reported these amounts to the patient's Medicaid plan as a "30-day supply." This prescription could have been filled with 2.5 mL. Thus, the patient received 82 excess drops on this dispense. The patient then refilled the prescription on May 8, 2018 and received one box, *i.e.* five mL, of eye drops. The patient's Medicare plan paid $340.93 for each dispensing.

- Patient 5-e-g (Government Healthcare Plan) received a prescription for one drop of medication, instilled once daily to each eye with the Latanoprost product, *i.e.*, 180 drops of Latanoprost every 90 days, that CVS designated as CVS #09242, Rx # 1078126. On July 9, 2018

a CVS pharmacy dispensed four bottles of drops, *i.e.*, 10 mL, or 328 drops, and falsely reported these amounts to the patient's Medicaid plan as a "90-day supply." This prescription could have been filled with 7.5 mL. Thus, the patient received 82 excess drops on this dispense. The patient then refilled the prescription on October 20, 2018 and received four boxes of eye drops. The patient's Medicare plan paid $22.68 for each dispensing.

- Patient 6-e-g (Government Healthcare Plan) received a prescription for one drop of medication per day with the Rhopressa product, i.e., 30 drops or one mL of Rhopressa every 30 days, that CVS designated as CVS #9562, Rx # 1540595. On January 18, 2019 a CVS pharmacy dispensed one box of drops, i.e., 2.5 mL, or 83 drops of medication, falsely and reported these amounts to the patient's Federal Employee Health plan "30-day supply." Although, the patient received the smallest commercially available product on this dispense, this package should have lasted 60 days. The patient's Federal Employee Health plan paid $122.69 for this dispensing.

- Subsequently CVS refilled Patient 6-e-g's prescription approximately 60 days later on March 19, 2019. A CVS pharmacy dispensed one box of drops, i.e., 2.5 mL, or 83 drops of medication, and falsely reported these amounts to the patient's Federal Employee Health plan and Rhopressa co-pay card as a "30-day supply." This dispensing, however, the patient was presented the opportunity to save $85.00 per month with a manufacturer's co-pay savings card. Although, the patient received the smallest commercially available product on this dispense, this package should have lasted 60 days. The patient's Federal Employee Heal plan paid $122.69 and the manufacturer's coupon payed $85.00 for this dispensing. By presenting the coupon to this patient and allowing the redemption to occur on a "monthly" basis, subsequently approximately 30 days later on April 15, 2019 a CVS pharmacy dispensed one box of drops, i.e., 2.5 mL, or 83

drops of medication, and falsely reported these amounts to the patient's Federal Employee Health Benefit plan and Rhopressa co-pay card as a "30-day supply."

- Patient 1-e-ca (California Private Insurance) received a prescription for two drops of medication per day with the Lumigan product, *i.e.*, 60 drops or 2.5 mL of Lumigan every 30 days, that CVS designated as CVS #9242, Rx # 1043437. On October 26, 2018 a CVS pharmacy dispensed one box of drops, *i.e.*, 5 mL, or 142 drops of medication, and falsely reported these amounts to the patient's United Health Care plan as a "30-day supply." Thus, the patient received 60 excess drops (*i.e.*, 2.5 excess mL) on this dispensing. The patient's United Health Care plan paid $419.61 for this dispensing.

- Subsequently CVS requested a 90-day supply prescription from Patient 1-e-ca's originating prescriber, suggesting 15 mL as the dispensing quantity. The prescriber approved the request and patient 1-e-ca received a prescription for two drops of medication per day with the Lumigan product, i.e., 180 drops or 7.5 mL of Lumigan every 90 days, that CVS designated as CVS #9242, Rx # 1126051. On November 23, 2018 a CVS pharmacy dispensed three boxes of drops, i.e., 15 mL, or 428 drops of medication, and falsely reported these amounts to the patient's United Health Care plan as a "90-day supply." Thus, the patient received 180 excess drops (i.e., 7.5 excess mL) on this dispensing. The patient's United Health Care plan paid $1,258.83 for this dispensing.

- Patient 2-e-ca (California Private Insurance) received a prescription for 4 drops of medication per day with the Restasis multidose product, i.e., 360 drops or 11 mL of Restasis multidose every 90 days, that CVS designated as CVS #9562, Rx # 1521867. On January 28, 2019 a CVS pharmacy dispensed three boxes of drops, i.e., 16.5 mL, or 589 drops of medication, and

falsely reported these amounts to the patient's HealthNet plan and Restasis co-pay card as a "90-day supply." Thus, the patient received 196 excess drops (i.e., 5.5 excess mL) on this dispense. The patient's HealthNet plan paid $1,971.99 for this dispensing.

- Patient 3-e-ca (California Private Insurance) received a prescription for four drops of medication per day with the Restasis multidose product, i.e., 360 drops or 11 mL of Restasis multidose every 90 days, that CVS designated as CVS #9562, Rx # 1481570. On April 17, 2018 a CVS pharmacy dispensed three boxes of drops, i.e., 16.5 mL, or 589 drops of medication, and falsely reported these amounts to the patient's HealthNet plan and Restasis co-pay card as a "90-day supply." Thus, the patient received 196 excess drops (i.e., 5.5 excess mL) on this dispense. The patient's HealthNet plan paid $1,971.99 for this dispensing.

- Subsequently CVS refilled Patient 3-e-ca's prescription on January 27, 2019 a CVS pharmacy dispensed three boxes of drops, i.e., 16.5 mL, or 589 drops of medication, and falsely reported these amounts to the patient's HealthNet plan and Restasis co-pay card as a "90-day supply." Thus, the patient received 196 excess drops (i.e., 5.5 excess mL) on this dispense. The patient's HealthNet plan paid $1,971.99 for this dispensing.

## X. THE EYE DROP MANUFACTURERS AND DISTRIBUTORS CAUSED CVS AND OTHER PHARMACIES TO FILE FALSE EYE DROP CLAIMS

178. The following companies manufactured the eye drops at issue in this case: (1) Alcon manufactured Azopt, Betoptic, Ciloxan, Ilevro, Iopidine, Isopto, Maxidex, Maxitrol, Moxeza, Nevanac, Omnipred, Pataday, Patanol, Pazeo, Simbrinza, Tobradex, Tobrex, Travatan Z, and Vigamox; (2) Allergan manufactured Restasis, Latisse, Aphagan P, and Lumigan; (3) Pfizer manufactured Neosporin and Xalatan; (4) Bausch and Lomb manufactured Alrex, Bepreve, Besivance, Istalol, Lotemax, and Prolensa; (5) Aerie manufactured Rocklatan and Rhopressa

(Alcon, Allergan, Pfizer, Bausch and Lomb, and Aerie are collectively referred to as the "Eye Drop Manufacturers").

179. The Eye Drop Manufacturers sell the eye drop products they produce to Cardinal, AmerisourceBergen, and McKesson as wholesale distributors who provide the operational infrastructure, including warehouse facilities, distribution vehicles, and inventory control systems necessary to distribute the drugs. (Cardinal, AmerisourceBergen and McKesson are collectively referred to as "the Distributors"). The Distributors sell the drugs to CVS and other pharmacies, including Walgreens and Rite Aid, for dispensing to customers. The Distributors also sell the drugs to healthcare providers such as hospitals and skilled nursing facilities for treatment of their patients.

**<u>The Eye Drop Manufacturers</u>**

<u>2.5 mL vs. 5 mL Packages</u>

180. Although representing to the FDA[35] that their drugs are available for distribution and billing in single 2.5mL packages, the Eye Drop Manufacturers in reality make 2.5mL packages

[35] The Drug Listing Act of 1972 requires registered drug establishments to provide the FDA with a current list of all drugs manufactured, prepared, propagated, compounded, or processed by them for commercial distribution. *See* 21 U.S.C. § 360(j)(1). Drug products are identified and reported using a unique, three-segment number, called the National Drug Code (NDC), which serves as a universal product identifier for drugs.

Four of the Five Manufacturers have registered multiple NDCs for its eye drop products, each number corresponding to a different package size. Alcon's Simbrinza listing under NDC number 0065-4147-25 with a package description of "1 BOTTLE, DROPPER IN 1 CARTON > 2.5 mL IN 1 BOTTLE." Allergan lists its Combigan product under NDC number 0023-9211-03 with a package description of "1 BOTTLE, DROPPER in 1 CARTON > 2.5 mL in 1 BOTTLE, DROPPER." Bosch and Lomb lists its Besivance under NDC number 24208-446-02 with a package description of "1 BOTTLE, DROPPER in 1 CARTON > 2 mL in 1 BOTTLE, DROPPER." Aerie lists its Rhopressa product under NDC number 70727-497-25 with a package description of "1 BOTTLE IN 1 CARTON > 2.5 mL IN 1 BOTTLE."

None of these single 2.5mL packages are available for purchase by pharmacies from any of the Distributors. Only the larger five or 10 mL bottles have been offered to pharmacies.

available mostly as free samples for marketing purposes. Institutional providers like hospitals and nursing homes, who are paid bundled rates for their services inclusive of all supplies, including drugs, and therefore have a strong incentive and desire to reduce drug costs by purchasing only the minimum quantities required, receive free 2.5mL bottles as samples and otherwise dispense much smaller quantities than five mL to their inpatients as needed.

181. For retail pharmacies like CVS, Walgreens and Rite Aid, who dispense to beneficiaries of government healthcare programs and private insurance, and whose profit margins from price spreads and manufacturer rebates are increased in proportion to the volume of product sold, the Eye Drop Manufacturers and Distributors make available mostly five mL packages or larger, which are guaranteed to oversupply many patients whose ophthalmic needs are less than five drops per day, all the while increasing the pharmacy's profits.

Marketing Five mL Packages as a 30-Day Supply

182. At the same time, the Manufacturers communicate to doctors, pharmacists and patients, through their marketing and drug-detailing programs, that 5 mL (142 drops) are the standard 30-day supply of the drug.

183. That a bottle of 5mL or 142 drops is the standard 30-day supply of ophthalmic medication regardless of the patient's actual need for a lower quantity is communicated to doctors, patients and pharmacists by (1) coupon, savings and free-sample programs that apply only to 5mL bottles or 142 drops for a 30-day supply or three 5mL bottles or 426 drops for a 90-day supply; and (2) drug detailing instructions provided to physicians and pharmacists suggesting that a full box of 5mL or 142 drops should be prescribed and dispensed even if the patient requires less than five drops per day.

184. For example, in detailing Allergan's Restasis Multidose product to doctors and pharmacists, Allergan provides advertisement materials suggesting that a prescription of 5.5mL is intended for a 30-day supply, and that three 5.5mL bottles is intended for a 90-day supply. Allergan's Restasis Multidose drop size according to Allergan's NDA filing with the FDA states, "one drop (approximately 28 mL)." This equates to 196 drops per bottle. Also, in the NDA filing is the recommended dose of "Instill one drop of RESTASIS MULTIDOSETM ophthalmic emulsion twice a day in each eye approximately 12 hours apart." The manufacturer should have known that advertising three bottles of 5.5mL each as a 90-day supply is an overestimate of the actual day supply of the medication. A 90-day supply could easily be satisfied with just two 5.5mL bottles. However, the advertising goes beyond printed pamphlets distributed to doctors and pharmacist. Allergan employs discount cards that tell the ultimate user of the medication that "[i]f you have a prescription, make sure it is for three bottles of RESTASIS MultiDose Most eligible patients pay as little as $5* for 3 bottles of RESTASIS MultiDose."

185. The dispensing pharmacist is left with the choice of either filing the claim for a single bottle of eye drops for a 30-day supply or falsifying the claim to the private insurance to allow the coupon to be processed for what it promised the recipient. The pharmacist is pressured by the patients, prescribing physicians, and manufacturer to comply with the stated three bottles for a 90-day supply, all while the insurance company is left to pay the inflated bill. Because these cards can only be used for commercially insured patients, they target these companies to extract as much money as possible, charging nearly $750.00 per bottle. Allergan is profiting by an extra $250.00 per month per patient from this scheme to defraud these private insurance companies.

186. Another example is Rhopressa manufactured by Aerie, which is promoted through a savings card. Aries' Rhopressa drop size, according to Aries' NDA filing with the FDA, is "a

dose volume of 35 µL." This equates to 100 drops per bottle. Also, in the NDA filing is the recommended dose of "[o]ne drop into the affected eye(s) once daily in the evening." According to Aerie, the terms of the co-pay card are "[e]ligible commercially insured patients with coverage for Rhopressa will pay the first $20 and receive up to $65 off the patient's co-pay for a 30-day supply. Offer valid up to 12 uses." Some insurances will cover more than a 30-day supply. Given that fact and given that most pharmacies employ either an automatic refill, or refill reminder program, it is advantageous to the insurance to bill these eye drops in exact calculated day supply to discourage wasting of excess medication.

187. It is in the interest of the manufacturer to treat their products like that of a dairy product, having a short shelf life or to be discarded when the pharmacy calls to pick up the refill. By utilizing a co-pay savings card, the pharmacist must bill the claim as a "COB" (coordination of benefits). This ties the primary insurance to the co-pay card in the details submitted, the day supply must match, and because of this the pharmacist is left with the choice of submitting the correct day supply or filing a false claim. If treating a single eye at one drop per day, a single bottle could last a patient 90 days, but because of the COB restrictions the pharmacist is pressured by the manufacturer and the patient to bill the single 2.5mL bottle as a 30-day supply to the private insurance company so the patient can receive the financial benefit the coupon promised.

188. Each other manufacturer listed as a defendant in the eye drop scheme incorporates some variation of the Resatasis or Rhopressa version of coercing extra bottles or overestimating the quantity needed for a 90-day supply or underestimating the correct day supply for the smallest package size commercially available for purchase.

<u>Paying Kickbacks & Inducements</u>

189. Government programs and private insurance impose financial obligations like deductibles, co-pays or the "doughnut hole" of Medicare Part D on patients to ensure that they retain a financial stake in the cost of their drugs and do not overutilize or waste drug benefits through unnecessary refills. The high cost of eye drops, for which co-pays alone can be $3.70 to $47 per month, is an obstacle in the way of the regular and frequent refilling of prescriptions for eye drops. Motivated by their desire to sell more eye drops, the Eye Drop Manufacturers have developed "coupon" and "savings card" programs that induce patients to switch brands and pay little or no attention to wasteful refill programs that automatically initiate refill transactions whether the patient has already used all his product or not.

190. CVS has taken notice of these programs and adopted its own software system known as the "RX Savings Finder," which is designed to make it easy for pharmacists to find manufacturer coupons or savings cards that will encourage customers to fill or re-fill their prescriptions.

191. Because coupon and savings card programs that knowingly and willfully pay a portion of a beneficiary's co-pays or other financial obligations are considered kickbacks in violation of the Anti-Kickback Statute by the Office of Inspector General of the Department of Health and Human Services, the manufacturer's programs purport to exclude Medicare and Medicaid beneficiaries and CVS's dispensing software "RX Connect" will not generally allow use of such cards for claims billed to those government programs. However, the coupons and cards are freely available for use with other government-funded insurance like FEHB plans and with private insurance. They are also used routinely to reduce beneficiary obligations when a beneficiary is paying cash and government programs are not being billed simultaneously, such as

when a Medicare Part D beneficiary has reached the "doughnut hole" in Part D coverage and elects to pay cash rather than accrue credit towards paying down the "doughnut hole."

192. Most coupons and savings cards are designed to be billed falsely by a pharmacy as secondary insurance, using a NCPDP (National Center for Prescription Drug Policy) code for "coordination of benefits," even though they are not in fact insurance. CVS bills the patient's financial responsibility or co-pay amount to the manufacturer's coupon or card in this manner and receives reimbursement in cash at the end of each month, a valuable financial benefit or remuneration that is knowingly and willfully paid by the manufacturer to the pharmacy in order to induce the patient to choose the manufacturer's product and pay little or no attention to wasteful refills.

193. Examples of such coupons and cards include the OPENINGS Program savings card, offered by Alcon, $30.00 cost to the patient per prescription for the Travatan, Simbrinza and Azopt products. This card states "If primary commercial prescription insurance exists, input card information as secondary coverage and transmit using the COB segment of the NCPDP transaction." Billing as a coordination of benefits as secondary indicates that the patient has other insurance coverage. The primary insurance has paid the insurer's portion of the claim and then the secondary insurance is being billed for the patient's financial responsibility or co-pay. However, coupon and savings card programs are not insurance and are not properly billed as insurance, so the manufacturer's instruction here to bill as though the coupon or card provides other coverage is a false or fraudulent statement.

194. Another example is the $30 co-pay card offered by Allergan, $30.00 cost to the patient per prescription up to 90-day supply per fill for the Lumigan, Combigan, and Alphagan products. This card states "Submit the claim to the primary third-party payer first, then submit the

balance due to ChangeHealthCare as a secondary-payer COB [coordination of benefits] with patient responsibility amount and a valid other coverage code (eg, 3 or 8)." Again, the instruction to submit the claim as secondary insurance is false or fraudulent and provides a valuable financial benefit or remuneration provided to the pharmacy and the patient in order to induce the patient to choose the manufacturer's drug and pay little or no attention to wasteful refills.

195. Another example is the Rhopressa savings card, offered by Aerie. This card offers a variable discount on the Rhopressa product, $20.00 cost to the patient if the product is covered by commercial insurance, $50.00 if not. This card states: "Submit the claim to the primary commercial insurance company first, then submit the balance due to CHANGE HEALTHCARE as a Secondary Payer COB with patient responsibility amount and a valid Other Coverage Code, (e.g. 8)." Again, the instruction to submit the claim as secondary insurance is false or fraudulent and pays a valuable financial benefit or remuneration provided to the pharmacy and the patient in order to induce the patient to purchase the manufacturer's drug and pay little or no attention to wasteful refills.

196. The above coupons are examples of coupon cards which must be accompanied by a valid commercial insurance, including FEHP, but nonetheless are valid for use in California and Illinois despite the insurance fraud prevention laws of those states. If transactions with these cards would violate the Anti-Kickback Statute and the Civil Monetary Penalties Law if used by beneficiaries of governmental programs, hence the restriction on use by government program beneficiaries, then they also violate the "runners and cappers" provision of the California Insurance Fraud Prevention Act and the "patient procurement" provision of the Illinois Claims Fraud Prevention Act. The programs knowingly provide valuable remuneration to patients and

pharmacies to induce them to choose specific brand name eye drop products and pay little or no attention to wasteful refills.

197. Other programs like Bausch and Lomb's Access Program, in which customers' costs are reduced to $75.00 per 30-day supply, are offered to patients with commercial insurance or paying full price without insurance and touts savings by making statements like "Eligible uninsured patients may pay no more than $75 for a 1 month supply." It continues: "[w]hen you use this coupon you are certifying that you have not submitted and will not submit a claim for reimbursement under any federal, state or other governmental programs, including, but not limited to Medicare (including Medicare Advantage and Part A, B, and D plans), Medicaid, TRICARE, Veterans Administration, or Department of Defense health coverage, CHAMPUS, the Puerto Rico Government Health Insurance Plan, or any other federal or state health care program".

198. Another example is the Xalatan savings card offered by Pfizer paying $125 per month for patients that have commercial insurance or are uninsured. The card states "To the pharmacist, for uninsured patients: Submit claim to PDM under RxBin# 610020. Patients will receive up to $125 per month off their out of pocket expenses." It continues; "[t]his savings offer is not valid for prescriptions that are eligible to be reimbursed, in whole or in part, by Medicaid, Medicare, Tricare, or other federal or state healthcare programs (including any state prescription drug assistance programs) and the Government Health Insurance Plan available in Puerto Rico (formerly known as "La Reforma de Salud")."

199. The two coupons above are examples of discount cards offered by a manufacturer that can be used by Medicare beneficiaries in the "doughnut hole." It is falsely billed as the primary insurance without the COB (coordination of benefits) sequence to capture information pertaining to the patient's primary coverage. Because drugs purchased by Medicare Part D beneficiaries for

long-term, chronic conditions like glaucoma are drugs "for which payment may be made in whole or in part under a Federal health care program" once the beneficiary exits the "doughnut hole," the knowing and willful payment of remuneration to pharmacies to induce purchases of such drugs, and pay little or no attention to wasteful refills, is a violation of the Anti-Kickback Statute and the Civil Monetary Penalties Law.

Manufacturer Summary

200. Because of the actions taken by the manufacturers they have knowingly caused vast quantities of eye drops to be wasted by patients and therefore caused CVS and other pharmacies to submit false claims on a massive scale to government programs and private insurance companies in California and Illinois.

201. Moreover, it has been entirely foreseeable to the Manufacturers at all times relevant to this complaint, and indeed was the intended consequence of their actions, that pharmacies would dispense three boxes of medication, and misrepresent to government programs and private insurance companies that three boxes represented a 90-day supply both for purposes of the original prescriptions and subsequent refills, or submit a single box and misrepresent to private insurance companies that such box constitutes a 30-day supply.

202. Accordingly, the Eye Drop Manufacturers and are liable for causing the submission of false claims by CVS and other pharmacies, including Walgreens and Rite Aid, and causing the use of false records or statements to get false claims paid to CVS and other pharmacies, including Walgreens and Rite Aid, for original prescriptions and refills.

**The Distributors**

203. The Distributors have also foreseeably caused pharmacies such as CVS, Walgreens and Rite Aid to dispense larger quantities of eye drops than required to fill 30- or 90-

day prescriptions and misrepresent to government healthcare programs and private insurance that such quantities represented a 30- or 90-day supply both for purposes of the original prescriptions and subsequent refills. To the best of Relator's knowledge, none of the Distributors have regularly offered eye drops in quantities of 2.5mL or less, which are required in order not to oversupply customers who receive only one drop per day in a single eye.

204. McKesson, the largest U.S. distributor, offers a range of services and solutions to aid the Eye Drop Manufacturers in distributing their eye drop products [redacted]. McKesson offers the same TrialScript program, a free trial program offered to the Eye Drop Manufacturers for the benefit of patients regardless of insurance, and LoyaltyScript, a co-pay savings program offered only to customers not enrolled in federally or state-funded insurance programs.

205. Both the TrialScript and LoyaltyScript programs provide the pharmacy customer a bottle of eye drops, typically at least five mL, as a 30-day supply, thereby establishing the customer's expectation about what he should receive as a 30-day supply, whether he requires five mL or less. Also, the CVS computer system always automatically uses the last fill quantity when a patient utilizes the interactive voice recognition system to request a refill by telephone, or when the prescription is automatically refilled by CVS at 30 days, so if the customer starts with a five mL bottle of drops as his 30-day supply, he is likely to continue with that quantity.

206. The TrialScript program is advertised to the Eye Drop Manufacturers as desirable because it allows them to "[g]ain insight into sample utilization not available with traditional samples." This program allows McKesson, through the pharmacies' claim adjudication process, to relay information about who the doctors are who have prescribed the eye drop products, where they are located, when the prescriptions were dispensed, and how much has been dispensed. This

information, discernable to both the manufacturer and distributor, shows the quantities of eye drops that are being dispensed.

207. McKesson's TrialScript coupon cards are marketed as usable with all insurance plans, including government healthcare plans, by sales representatives who present coupons in bundles of approximately 10 cards directly to pharmacists. The cards say that they are good to purchase eye drop in a quantity of 5mL. So, if a patient appears in the pharmacy with a prescription for eye drops, the pharmacist can use a TrialScript card to dispense a full 5mL bottle of drops to the customer without billing the patient's insurance, whether a government program or private insurance. The pharmacy bills McKesson, which passes the cost along to the manufacturer. Thus, McKesson, acting on behalf of the manufacturer, knowingly and willfully pays valuable remuneration to the pharmacy to induce the referral of patients and sets up the quantities for future prescriptions and refills.

208. Free trial cards under the TrialScript program differ from co-pay savings cards under the LoyaltyScript program as the TrialScript pharmacy claim is never billed to Medicare or Medicaid until there is a refill of the initial prescription; only the trial card is processed by the pharmacy. Because the customer gets a full bottle of 5mL during the free trial, whether he requires that many drops or not, that is what he expects from future prescriptions or refills, whether billed to government healthcare programs or private insurance. Also, the CVS computer system always automatically uses the last fill quantity when a patient utilizes the interactive voice recognition system to request a refill by telephone, or when the prescription is automatically refilled by CVS. A human does not enter the refill quantity, so an overfill is more likely to occur on a refill than with a new prescription.

209. As with the manufacturer coupons and savings cards discussed above, what McKesson gives doctors and pharmacists is a cash reimbursement as though McKesson itself were an insurance plan. The pharmacy processes McKesson's savings card as though McKesson were the primary insurance plan without submitting the claim to another insurance plan for reimbursement, although future claims for refills of the prescription will be submitted to federal healthcare plans or private insurance in full-box quantities. Because the TrialScripts program involves cash payments to the pharmacy for the purpose of inducing patient referrals, it violates the "remuneration" prohibition of the federal Anti-Kickback Statute where government programs are involved, the "patient procurement" prohibition of the Illinois Claims Fraud Prevention Act where Illinois private insurance is involved, and the "runners and cappers" provision of Section 1871.7(a) of the California Insurance Code if California private insurance is involved.

210. The LoyaltyScript savings cards, which are provided to pharmacies and doctors, prominently display that the savings cards are good in a quantity of one or more 5ml bottles, which causes the doctor to write his script for a 5ml bottle and causes patients to demand what the coupon allows them to receive. The savings cards are used to waive a portion of the patient's co-payment to induce him to purchase eye drop products distributed by McKesson in 5mL quantities, to set up the quantities for future refills and to induce the patient to pay little or no attention to wasteful refills. If the transaction is billed to a federal healthcare program, it constitutes a violation of the Anti-Kickback Statute and the Civil Monetary Penalty Law. For this reason, McKesson supposedly offers the LoyaltyScript program only to customers who are not insured under federal healthcare programs. However, patients in the Medicare Part D "doughnut hole" use them, as do California and Illinois patients with private insurance.

211. For example, if a doctor starts a patient on Combigan and has a coupon for "$25.00 per bottle," even though he wants to start his patient on just two drops per day in one eye or 60 drops per month, in most cases the doctor writes the prescription for one 5mL bottle so his patient can get the benefit of the co-payment waiver or savings. The coupon gives instructions to the pharmacy to bill the claim as secondary to insurance, i.e. to bill the insurance first and use the coupon to satisfy the co-pay. When the pharmacist is presented with the prescription and coupon, if the insurance allows a 30-day supply, a 2.5mL is the correct quantity to dispense, but because the doctor tells the patient the eye drop is $25 for a 5mL bottle, there is a lot of pressure on the pharmacist from the manufacturer, the doctor and the patient to dispense the larger bottle and bill the coupon. In order to do so, the pharmacist has to falsify the claim for a 5mL bottle as a 30-day supply.

212. The knowing actions of the Distributors in (1) failing to make small-quantity bottles of 2.5mL or less available to pharmacies; (2) sponsoring free trial and savings card programs in violation of the Anti-Kickback Statute, the Civil Monetary Penalty Law and the insurance fraud prevention acts of California and Illinois to promote dispensing of 5mL and larger bottles of eye drops and ally patient concern about wasteful refills, are substantial factors in the pharmacies' ultimate submission of false claims for quantities in excess of that required for a 30- or 90-day supply and/or the use of false statements or records to get false claims paid for both original prescriptions and refills.

213. Moreover, it has been entirely foreseeable to the Distributors at all times relevant to this complaint, and indeed was the intended consequence of their actions, that pharmacies would dispense quantities of 5mL or more and misrepresent to government healthcare programs and

private insurance companies that such quantities represented a 30- or 90-day supply both for purposes of the original prescriptions and subsequent refills.

214. Accordingly, the eye drop Manufacturers and Distributors are liable for causing the submission of false claims by CVS and other pharmacies, including Walgreens and Rite Aid, and causing the use of false records or statements to get false claims paid to CVS and other pharmacies, including Walgreens and Rite Aid, for original prescriptions and refills.

## XI. FAILURE TO REFUND OVERPAYMENTS

215. Through the foregoing conduct, the CVS Operating Entities have also knowingly avoided an obligation to repay funds owed the United States and the state Plaintiffs by improperly failing to disclose and return overpayments. The United States and the state Plaintiffs overpaid the CVS Operating Entities for the pens and eye drops that were dispensed in excess of the supply that should have been dispensed. The CVS Operating Entities have knowingly retained this difference and failed to disclose or return it. *See* 42 U.S.C. § 1320a-7k(d) (imposing an affirmative duty on health care providers who bill Medicare or Medicaid to disclose any Medicare or Medicaid overpayments they identify to the government health care program within 60 days of discovery).

## XII. MATERIALITY

216. The CVS Operating Entities' (1) dispensing of more [redacted] eye drops than required to provide a 30- or 90-day supply, (2) failure to dispense in accordance with the prescribers' instructions and (3) misrepresentation of the days' supply of [redacted] eye drops dispensed were all material to decisions of the government healthcare programs and private insurers to pay claims, or to not seek reimbursement for claims previously paid, because such false statements and documents would have a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

217. Furthermore, government healthcare programs and private insurers do not routinely pay for a supply of drugs known to be more than a 30- or 90-day supply, for drugs known not to be dispensed in accordance with a prescriber's orders or for drugs when the days' supply is known to have been misrepresented. In fact, the state and federal governments have recently pursued FCA claims against Walgreens involving similar allegations, demonstrating that the state and federal governments deem such matters highly material.[36]

## XIII. SCIENTER

218. The CVS Operating Entities acted with actual knowledge of the falsity of the days' supply information reported to government healthcare programs and private insurers or with deliberate ignorance or reckless disregard for the truth or falsity of the days' supply information they reported. The actual quantities of [redacted] eye drops contained in each package was published by the FDA and publicly available. The quantity to be administered by the patient daily was reflected in the prescribers' orders. If pharmacists dispensing [redacted] eye drops failed to calculate the actual days' supply dispensed, they did so in deliberate ignorance or with reckless disregard for the truth or falsity of the days' supply information they reported. The CVS Corporate Entities, who instructed pharmacists working for the CVS Operating Entities not to [redacted] use standardized charts to determine days' supply, also acted with actual knowledge or with deliberate ignorance or reckless disregard for the same reasons.

219. [redacted]

---

[36] *See U.S. ex rel. Rahimi et al v. Walgreen Boots Alliance, Inc.*, No. 1:15-cv-05686-PAC on the docket of the United States District Court for the Southern District of New York (settled for $209.2 million on January 22, 2019).

[redacted]

220. The Eye Drop Manufacturers and Distributors had actual knowledge that eye drop bottles were being dispensed by the CVS Operating Entities in minimum quantities of five mL because they made only five mL quantities available for purchase by retail pharmacy chains when 2.5 mL bottles had been approved by the FDA and they could have easily obtained FDA approval for even smaller quantities had they bothered to do so. Knowing that only five mL bottles were being dispensed and that a five mL bottle would oversupply many patients, it was incumbent upon the Eye Drop Manufacturers and Distributors to investigate how retail pharmacies like CVS were reporting the days' supply. Having failed to do so, the Eye Drop Manufacturers and Distributors acted with deliberate ignorance or with reckless disregard for the truth or falsity of the days' supply information they caused the CVS Operating Entities and other pharmacy chains, including Walgreens and Rite Aid, to report to government healthcare programs and private insurers.

## XIV. <u>CLAIMS FOR RELIEF</u>

### <u>COUNT ONE</u>

(Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*)

221. This is a civil action by Relator Nicholas Zimniski, acting on behalf of and in the name of the United States, against all Defendants under the False Claims Act.

222. Relator re-alleges and incorporates by reference paragraphs 1 through 220 as though fully set forth herein.

223. Defendants Alabama CVS Pharmacy LLC, Alaska CVS Pharmacy LLC, American Drug Stores Delaware LLC, Arbor Drugs Inc., Arizona CVS Stores LLC, Arkansas CVS Pharmacy LLC, Asbury Evanston CVS LLC, Bergen Mall NJ CVS Inc., Big B Drugs Inc., Brown Recker CVS LLC, Busse CVS LLC, CareCenter Pharmacy LLC, Connecticut CVS Pharmacy LLC, CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, CVS 3264 Phoenix LLC, CVS 3268 Gilbert LLC, CVS 3745 Peoria LLC, CVS Albany LLC, CVS Bellmore Avenue LLC, CVS EGL Baseline Tempe AZ LLC, CVS Gilbert 3272 LLC, CVS Manchester NH LLC, CVS Of Pennsylvania, Inc., CVS Of Virginia Inc., CVS Pharmacy Inc., CVS State Capital LLC, Delaware CVS Pharmacy LLC, Desert Eastern CVS LLC, District Of Columbia CVS Pharmacy LLC, Garfield Beach CVS, LLC, Georgia CVS Pharmacy LLC, German Dobson CVS LLC, Goodyear CVS LLC, Grand St. Paul CVS LLC, Henderson CVS LLC, Highland Park CVS LLC, Holiday CVS , LLC, Hook SuperX Inc., Idaho CVS Pharmacy LLC, Iowa CVS Pharmacy LLC, Kankakee Il CVS LLC, Kansas CVS Pharmacy LLC, Kentucky CVS Pharmacy LLC, Longs Drug Store California LLC, Louisiana CVS Pharmacy LLC, Main Street Pharmacy LLC, Maryland CVS Pharmacy LLC, Maryland Parkway CVS LLC, Michigan Chicago CVS LLC, Mississippi CVS Pharmacy LLC, Missouri CVS Pharmacy LLC, Montana CVS Pharmacy LLC, Nebraska CVS Pharmacy LLC, Nevada CVS Pharmacy LLC, New Jersey CVS Pharmacy LLC, North Carolina CVS Pharmacy LLC, Ohio CVS Stores LLC, Oklahoma CVS Pharmacy LLC, Oregon CVS

Pharmacy LLC, Pennsylvania CVS Pharmacy LLC, ProCare Pharmacy LLC, Puerto Rico CVS Pharmacy LLC, Rea And Derick Inc P 1835, Revco Discount Drug Centers Inc., Rhode Island CVS Pharmacy LLC, Senip CVS LLC, Sheffield Avenue CVS LLC, South Carolina CVS Pharmacy LLC, South Wabash CVS LLC, Tennessee CVS Pharmacy LLC, Thomas Phoenix CVS LLC, University Mesa CVS LLC, Utah CVS Pharmacy LLC, Vermont CVS Pharmacy LLC, Virginia CVS Pharmacy LLC, Warm Springs Road CVS LLC, Washington CVS Pharmacy LLC, West Jackson CVS LLC, West Virginia CVS Pharmacy LLC, Wisconsin CVS Pharmacy LLC, Woodlawn Chicago CVS LLC, and Woodward Detroit CVS LLC (the "CVS Operating Entities") have knowingly presented or caused to be presented false claims for payment or approval by Medicare, Medicaid, FEHBP, VA, TRICARE/CHAMPUS and DOL in violation of 31 U.S.C. § 3729(a)(1)(A).

224. The CVS Operating Entities have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims against Medicare, Medicaid, FEHBP, VA, TRICARE/CHAMPUS and DOL in violation of 31 U.S.C. § 3729(a)(1)(B).

225. The CVS Operating Entities have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Medicare, Medicaid, FEHBP, VA, TRICARE/CHAMPUS and DOL healthcare programs, in violation of 31 U.S.C. § 3729(a)(1)(G).

226. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of the CVS Operating Entities, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (A), (B) and (G) of 31 U.S.C. §

3729(a)(1), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to 31 U.S.C. § 3729(a)(1) (C).

227. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of the CVS Operating Entities, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" each of them to violate subparagraphs (A), (B) and (G) of 31 U.S.C. § 3729(a)(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

228. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused the submission of false claims, and the use of false records or statements to get false claims paid, by the CVS Operating Entities and other pharmacies, including Walgreens and Rite Aid, making [redacted] the [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to subparagraphs (A), (B) and (G) of 31 U.S.C. § 3729(a)(1).

229. The United States, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

230. Based on the foregoing allegations, the United States has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWO**

(Alaska Medical Assistance False Claims and Reporting Act,
Alaska Stat. Ann. § 09.58.010 et seq.)

231. Relators re-allege Paragraphs 1 through 220 inclusive..

232. Defendant Alaska CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Alaska Stat. Ann. § 09.58.010 (a)(1).

233. Defendant Alaska CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Alaska Stat. Ann. § 09.58.010 (a)(2).

234. Defendant Alaska CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Alaska, in violation of Alaska Stat. Ann. § 09.58.010 (a)(4).

235. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Alaska CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (1), (2) and (4) of Alaska Stat. Ann. § 09.58.010 (a), making CVS Health Corporation, CVS Pharmacy Inc. and Alaska CVS Pharmacy LLC jointly liable pursuant to Alaska Stat. Ann. § 09.58.010 (a)(3).

236. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parent of Alaska CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (4) of Alaska Stat. Ann. § 09.58.010 (a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

237. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Alaska CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (4) of Alaska Stat. Ann. § 09.58.010

(a), making the Defendant [redacted], Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

238. The state of Alaska, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

239. Based on the foregoing allegations, the state of Alaska has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THREE**

(California False Claims Act, Cal. Gov't Code § 12650 *et seq.*)

240. Relator re-alleges Paragraphs 1 through 220 inclusive.

241. Defendants Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval by the California Medi-Cal program, in violation of Cal. Gov't Code § 12651(a)(1).

242. Defendants Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims against the California Medi-Cal program, in violation of Cal. Gov't Code § 12651(a)(2).

243. Defendants Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the California Medi-Cal program, in violation of Cal. Gov't Code § 12651(a)(7).

244. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (7) of Cal. Gov't Code § 12651(a), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to Cal. Gov't Code § 12651(a)(3).

245. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" each of them to violate subparagraphs (1), (2) and (7) of Cal. Gov't Code § 12651(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

246. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Garfield Beach CVS LLC, Longs Drug Store California LLC, ProCare Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of Cal. Gov't Code § 12651(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

247. The state of California, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

248. Based on the foregoing allegations, the state of California has suffered actual damages, with the exact amount to be determined at trial.

**COUNT FOUR**

(False Claims Under Cal. Ins. Code § 1871.7(b))

249. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 220 above as though fully set forth herein.

250. Defendants Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC knowingly presented, or caused to be presented, false or fraudulent claims for compensation to the California Insurers in order to obtain reimbursement for health care services covered by private insurance and also used or encouraged the use of false, fraudulent, and/or misleading oral or written statements in conjunction with claims for compensation to private insurance companies in violation of Section 550 of the Penal Code and Ins. Code § 1871.7(b).

251. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Garfield Beach CVS LLC, Longs Drug Store California LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" each of them to violate Section 550 of the Penal Code and Ins. Code § 1871.7(b), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

252. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Garfield Beach CVS LLC, Longs Drug Store California LLC, ProCare Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate Section 550 of the Penal Code and Ins. Code § 1871.7(b), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

253. The California Insurers, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

254. Based on the foregoing allegations, the California Insurers have suffered actual damages, with the exact amount to be determined at trial.

**COUNT FIVE**

(Kickback or Runner and Capper Claims Under Cal. Ins. Code § 1871.7(a))

255. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 220 above as though fully set forth herein.

256. The [redacted] Eye Drop Manufacturers and Distributors knowingly paid kickbacks to employ "runners and cappers" or steerers or other persons to procure clients or patients within the meaning of Section 1871.7(a) of the Cal. Ins. Code.

257. Compliance with Section 1871.7(a) is material to treatment of claims for reimbursement by the California Insurers. Had the California Insurers known that prescriptions for [redacted] eye drops had been written and dispensed as a result of kickbacks paid to procure clients or patients, they would not have provided reimbursement for them.

258. The [redacted] Eye Drop Manufacturers and Distributors' deceit was a substantial factor causing the California Insurers to reimburse for services tainted by the illegal runner and capper arrangements.

259. Based on the foregoing allegations, the California Insurers have suffered actual damages, with the exact amount to be determined at trial.

**COUNT SIX**

(Colorado False Claims Act, Colo. Rev. Stat. § 25.5-4-303.5 *et seq.*)

260. Relator re-alleges Paragraphs 1 through 220 inclusive.

261. Defendants CVS Pharmacy Inc. and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(a).

262. Defendants CVS Pharmacy Inc. and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(b).

263. Defendants CVS Pharmacy Inc. and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Colorado, in violation of Colo. Rev. Stat. § 25.5-4-305(1)(f).

264. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC, have conspired with it to commit violations of subparagraphs (a), (b) and (f) of Colo. Rev. Stat. § 25.5-4-305(1), making CVS Health Corporation, CVS Pharmacy Inc. and ProCare Pharmacy LLC jointly liable pursuant to Colo. Rev. Stat. § 25.5-4-305(1)(g).

265. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parent of ProCare Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (a), (b) and (f) of Colo. Rev. Stat. § 25.5-4-305(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

266. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused ProCare Pharmacy LLC, and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (f) of Colo. Rev. Stat. § 25.5-4-

305(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

267. The state of Colorado, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

268. Based on the foregoing allegations, the state of Colorado has suffered actual damages, with the exact amount to be determined at trial.

**COUNT SEVEN**

(Connecticut False Claims Act, Conn. Gen. Stat. § 4-274 *et seq.*)

269. Relator re-alleges Paragraphs 1 through 220 inclusive.

270. Defendant Connecticut CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation Conn. Gen. Stat. § 4-275(a)(1).

271. Defendant Connecticut CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Conn. Gen. Stat. § 4-275(a)(2).

272. Defendant Connecticut CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Connecticut, in violation of Conn. Gen. Stat. § 4-275(a)(8).

273. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Connecticut CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (1), (2) and (8) of Conn. Gen. Stat. § 4-275(a), making CVS Health Corporation, CVS Pharmacy Inc. and Connecticut CVS Pharmacy LLC jointly liable pursuant to Conn. Gen. Stat. § 4-275(a)(3).

274. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Connecticut CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (8) of Conn. Gen. Stat. § 4-275(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

275. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Connecticut CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (8) of Conn. Gen. Stat. § 4-275(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

276. The state of Connecticut, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

277. Based on the foregoing allegations, the state of Connecticut has suffered actual damages, with the exact amount to be determined at trial.

## COUNT EIGHT

(Delaware False Claims and Reporting Act, 6 Del. Code § 1201 *et seq.*)

278. Relator re-alleges Paragraphs 1 through 220 inclusive.

279. Defendant Delaware CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of 6 Del. Code § 1201(a)(1).

280. Defendant Delaware CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 6 Del. Code § 1201(a)(2).

281. Defendant Delaware CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Delaware, in violation 6 Del. Code § 1201(a)(7).

282. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Delaware CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (1), (2) and (7) of 6 Del. Code § 1201(a), making CVS Health Corporation, CVS Pharmacy Inc. and Delaware CVS Pharmacy LLC jointly liable pursuant to 6 Del. Code § 1201(a)(3).

283. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Delaware CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (7) of 6 Del. Code § 1201(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

284. The Defendant [redacted] [redacted] [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Delaware CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of 6 Del. Code § 1201(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

285. The state of Delaware, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

286. Based on the foregoing allegations, the state of Delaware has suffered actual damages, with the exact amount to be determined at trial.

**COUNT NINE**

(Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*)

287. Relator re-alleges Paragraphs 1 through 220 inclusive.

288. Defendants Holiday CVS , L.L.C. and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of Fla. Stat. § 68.082(2)(a).

289. Defendant Holiday CVS , L.L.C. and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Fla. Stat. § 68.082(2)(b).

290. Defendant Holiday CVS L.L.C. and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Florida, in violation of Fla. Stat. § 68.082(2)(g).

291. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Holiday CVS L.L.C. and ProCare Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (a), (b) and (g) of Fla. Stat. § 68.082(2), making CVS Health Corporation, CVS Pharmacy Inc. and both of their co-conspirators jointly liable pursuant to Fla. Stat. § 68.082(2)(c).

292. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Holiday CVS L.L.C. and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (a), (b) and (g) of Fla. Stat. § 68.082(2), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

293. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Holiday CVS, L.L.C., ProCare Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (g) of Fla. Stat. § 68.082(2), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

294. The state of Florida, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

295. Based on the foregoing allegations, the state of Florida has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TEN**

(Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*)

296. Relator re-alleges Paragraphs 1 through 220 inclusive.

297. Defendants Big B Drugs Inc., Georgia CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly presented or caused to be presented false or fraudulent claims to the state of California, in violation of Ga. Code Ann. § 49-4- 168.1(a)(1).

298. Defendants Big B Drugs Inc., Georgia CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Ga. Code Ann. § 49-4-168.1(a)(2).

299. Defendants Big B Drugs Inc., Georgia CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Georgia, in violation of Ga. Code Ann. § 49-4-168.1(a)(7).

300. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parent of Big B Drugs Inc., Georgia CVS Pharmacy LLC and ProCare Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (7) of Ga. Code Ann. § 49-4-168.1(a), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to Ga. Code Ann. § 49-4-168.1(a) (3).

301. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Big B Drugs Inc., Georgia CVS Pharmacy LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (7) of Ga. Code Ann. § 49-4-168.1(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

302. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Big B Drugs Inc., Georgia CVS Pharmacy LLC, ProCare Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of Ga. Code Ann. § 49-4-168.1(a), making the Defendant [redacted], Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

303. The state of Georgia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

304. Based on the foregoing allegations, the state of Georgia has suffered actual damages, with the exact amount to be determined at trial.

## COUNT ELEVEN

(Hawaii False Medicaid Claims Act, Haw. Rev. Stat. § 46-171 *et seq.*)

305. Relator re-alleges Paragraphs 1 through 220 inclusive.

306. Defendant ProCare Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Haw. Rev. Stat. § 46-171(a)(1).

307. Defendant ProCare Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Haw. Rev. Stat. § 46-171(a)(2).

308. Defendant ProCare Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Hawaii, in violation of Haw. Rev. Stat. § 46-171(a)(6).

309. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC, have conspired with it to commit violations of subparagraphs (1), (2) and (7) of Haw. Rev. Stat. § 46-171(a), making CVS Health Corporation, CVS Pharmacy Inc. and ProCare Pharmacy LLC jointly liable pursuant to Haw. Rev. Stat. § 46-171(a)(3).

310. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (7) of Haw. Rev. Stat. § 46-171(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

311. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused ProCare Pharmacy LLC and other pharmacies, including

Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of Haw. Rev. Stat. § 46-171(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

312. The state of Hawaii, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

313. Based on the foregoing allegations, the state of Hawaii has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWELVE**

(Illinois False Medicaid Claims Act, 740 Ill. Comp. Stat. 175/1 *et seq.*)

314. Relator re-alleges Paragraphs 1 through 220 inclusive.

315. Defendants Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of 740 Ill. Comp. Stat. 175/3(1)(A).

316. Defendants Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 740 Ill. Comp. Stat. 175/3(1)(B).

317. Defendants Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Illinois, in violation of 740 Ill. Comp. Stat. 175/3(1)(G).

318. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (A), (B) and (G) of 740 Ill. Comp. Stat. 175/3(1), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to 740 Ill. Comp. Stat. 175/3(1) (C).

319. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (A), (B) and (G) of 740 Ill. Comp. Stat. 175/3(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

320. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC, Woodlawn Chicago CVS LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (A), (B) and (G) of 740 Ill. Comp. Stat. 175/3(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

321. The state of Illinois, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

322. Based on the foregoing allegations, the state of Illinois has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTEEN**

(Illinois Insurance Claims Fraud Prevention Act, 750 ILCS 92/1 *et seq.*: Use of False and Fraudulent Statements)

323. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 220 above as though fully set forth herein.

324. Defendants Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC knowingly presented, or caused to be presented, false or fraudulent claims for compensation to the Illinois Insurers in order to obtain reimbursement for health care services covered by private insurance and also used or encouraged the use of false, fraudulent,

and/or misleading oral or written statements in conjunction with claims for compensation to private insurance companies in violation of 750 ILCS 92/5(b) and 720 ILCS 5/17-10.5.

325. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" each of them to violate 750 ILCS 92/5(b) and 720 ILCS 5/17-10.5, making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

326. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Asbury Evanston CVS LLC, Busse CVS LLC, CVS 3745 Peoria LLC, Highland Park CVS LLC, Hook SuperX INC, Kankakee IL CVS LLC, Michigan Chicago CVS LLC, Sheffield Avenue CVS LLC, South Wabash CVS LLC, West Jackson CVS LLC and Woodlawn Chicago CVS LLC and other pharmacies, including Walgreens and Rite Aid, to violate 750 ILCS 92/5(b) and 720 ILCS 5/17-10.5, making the Defendant Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

327. The Defendants' violations of 750 ILCS 92/5(b) and 720 ILCS 5/17-10.5 were material to treatment of claims for reimbursement by Illinois insurers. Had Illinois insurers known that claims for the Manufacturers' [redacted] eye drop products were for quantities greater than those that were medically necessary, the insurance companies would not have provided reimbursement for them.

328. Based on the foregoing allegations, the Illinois Insurers have suffered actual damages, with the exact amount to be determined at trial.

**COUNT FOURTEEN**

(Illinois Insurance Claims Fraud Prevention Act Violations for the Payment Of Kickbacks or Inducements)

329. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 220 above as though fully set forth herein.

330. The [redacted] Eye Drop Manufacturers and Distributors knowingly paid kickbacks or remuneration to procure clients or patients to obtain services or benefits under Illinois insurance contracts in violation of 740 ILCS 92/5(a).

331. Compliance with Section 740 ILCS 92/5(a) is material to treatment of claims for reimbursement by private insurance companies. Had the Illinois Insurers known that prescriptions for [redacted] eye drops had been written and dispensed as a result of kickbacks paid to procure clients or patients, they would not have provided reimbursement for them.

332. The [redacted] Eye Drop Manufacturers and Distributors' deceit was a substantial factor causing the Illinois Insurers to reimburse for services tainted by the illegal kickbacks or remuneration.

333. Based on the foregoing allegations, the Illinois Insurers have suffered actual damages, with the exact amount to be determined at trial.

**COUNT FIFTEEN**

(Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. § 5-11-5.5-1 *et seq.*)

334. Relator re-alleges Paragraphs 1 through 220 inclusive.

335. Defendant Hook SuperX Inc. has knowingly presented or caused to be presented false claims for payment or approval, in violation of Ind. Code Ann. § 5-11-5.5-2(b)(1) and (b)(8).

336. Defendant Hook SuperX Inc. has made or used, or caused to be made or used, false records or statements to obtain payment or approval false claims , in violation of Ind. Code Ann. § 5-11-5.5-2(b)(2) and (b)(8).

337. Defendant Hook SuperX Inc. has made or used, or caused to be made or used, false records or statements to avoid an obligation to pay or transmit property, in violation of Ind. Code Ann. § 5-11-5.5-2(b)(6) and (b)(8).

338. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Hook SuperX Inc., have conspired with it to commit violations of subparagraphs (1), (2) and (6) of Ind. Code Ann. § 5-11-5.5-2(b), making CVS Health Corporation, CVS Pharmacy Inc. and Hook SuperX Inc. jointly liable pursuant to Ind. Code Ann. § 5-11-5.5-2(b)(7).

339. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Hook SuperX Inc., have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (6) of Ind. Code Ann. § 5-11-5.5-2(b), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to Ind. Code Ann. § 5-11-5.5-2(b).

340. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Hook SuperX Inc. and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (6) of Ind. Code Ann. § 5-11-5.5-2(b), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to Ind. Code Ann. § 5-11-5.5-2(b).

341. The state of Indiana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

342. Based on the foregoing allegations, the state of Indiana has suffered actual damages, with the exact amount to be determined at trial.

**COUNT SIXTEEN**

(Iowa False Claims Act, Iowa Code § 685.1 *et seq.*)

343. Relator re-alleges Paragraphs 1 through 220 inclusive.

344. Defendant Iowa CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Iowa Code § 685.2(1)(a).

345. Defendant Iowa CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Iowa Code § 685.2(1)(b).

346. Defendant Iowa CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Iowa, in violation of Iowa Code § 685.2(1)(g).

347. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Iowa CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (a), (b) and (g) of § 685.2(1), making CVS Pharmacy Inc. and Iowa CVS Pharmacy LLC jointly liable pursuant to § 685.2(1)(c).

348. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Iowa CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (a), (b) and (g) of § 685.2(1), making CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

349. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Iowa CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (g) of § 685.2(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

350. The state of Iowa, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

351. Based on the foregoing allegations, the state of Iowa has suffered actual damages, with the exact amount to be determined at trial.

**COUNT SEVENTEEN**

(Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*)

352. Relator re-alleges Paragraphs 1 through 220 inclusive.

353. Defendant Louisiana CVS Pharmacy LLC has knowingly presented or caused to be presented false or fraudulent claims, in violation of La. Rev. Stat. Ann. § 46:438.3(A).

354. Defendant Louisiana CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of La. Rev. Stat. Ann. § 46:438.3(B).

355. Defendant Louisiana CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Louisiana, in violation of La. Rev. Stat. Ann. § 46:438.3(C).

356. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Louisiana CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (A), (B) and (C) of La. Rev. Stat. Ann. § 46:438.3, making CVS Health Corporation and CVS Pharmacy Inc. and Louisiana CVS Pharmacy LLC jointly liable pursuant to La. Rev. Stat. Ann. § 46:438.3 (D).

357. Defendant CVS Pharmacy Inc., as the direct or indirect parents of Louisiana CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (A), (B) and (C) of La. Rev. Stat. Ann. § 46:438.3, making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

358. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Louisiana CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (A), (B) and (C) of La. Rev. Stat. Ann. § 46:438.3, making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

359. The state of Louisiana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

360. Based on the foregoing allegations, the state of Louisiana has suffered actual damages, with the exact amount to be determined at trial.

**<u>COUNT EIGHTEEN</u>**

(Maryland False Health Claims Act, Md. Code Ann., Health-Gen. § 2-601 *et seq.*)

361. Relator re-alleges Paragraphs 1 through 220 inclusive.

362. Defendants Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835 and Revco Discount Drug Centers Inc. have knowingly presented or caused to be presented false claims for payment or approval, in violation of Md. Code Ann., Health- Gen. § 2-602(a)(1).

363. Defendants Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835 and Revco Discount Drug Centers Inc. have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Md. Code Ann., Health-Gen. § 2-602(a)(2).

364. Defendants Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835 and Revco Discount Drug Centers Inc. have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Maryland, in violation of Md. Code Ann., Health-Gen. § 2-602(a)(8).

365. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835 and Revco Discount Drug Centers Inc., have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (8) of Md. Code Ann., Health-Gen. § 2-602(a), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to Md. Code Ann., Health- Gen. § 2-602(a)(3).

366. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835 and Revco Discount Drug Centers Inc., have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (8) of Md. Code Ann., Health- Gen. § 2-602(a), making CVS

Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

367. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835, Revco Discount Drug Centers Inc. and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (8) of Md. Code Ann., Health- Gen. § 2-602(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

368. The state of Maryland, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

369. Based on the foregoing allegations, the state of Maryland has suffered actual damages, with the exact amount to be determined at trial.

## COUNT NINETEEN

(Massachusetts False Claims Act, Mass. Gen. Laws Ch. 12, § 5A *et seq.*)

370. Relator re-alleges Paragraphs 1 through 220 inclusive.

371. Defendants CVS Pharmacy Inc., Main Street Pharmacy LLC and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of Mass. Gen. Laws Ch. 12, § 5B(a)(1).

372. Defendants CVS Pharmacy Inc., Main Street Pharmacy LLC and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Mass. Gen. Laws Ch. 12, § 5B(a)(2).

373. Defendants CVS Pharmacy Inc., Main Street Pharmacy LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the commonwealth of Massachusetts, in violation of Mass. Gen. Laws Ch. 12, § 5B(a)(9).

374. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Main Street Pharmacy LLC and ProCare Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (8) of Mass. Gen. Laws Ch. 12, § 5B(a), making CVS Pharmacy Inc. and both of its co-conspirators jointly liable pursuant to Mass. Gen. Laws Ch. 12, § 5B(a)(3).

375. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Main Street Pharmacy LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (9) of Mass. Gen. Laws Ch. 12, § 5B(a), making CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

376. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Main Street Pharmacy, LLC, Maryland CVS Pharmacy LLC, Rea And Derick Inc. P 1835, Revco Discount Drug Centers Inc. and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (9) of Mass. Gen. Laws Ch. 12, § 5B(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

377. The state of Massachusetts, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

378. Based on the foregoing allegations, the commonwealth of Massachusetts has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWENTY**

(Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*)

379. Relator re-alleges Paragraphs 1 through 220 inclusive.

380. Defendants Arbor Drugs Inc. and Woodward Detroit CVS LLC have knowingly made, or caused to be made, false representations of material fact for use in determining rights to benefits or payments, in violation of Mich. Comp. Laws § 400.603 (1) or (2).

381. Defendants Arbor Drugs Inc. and Woodward Detroit CVS LLC, with knowledge of the occurrence of an event affecting its initial or continued right to any benefit or payment, have knowingly concealed or failed to disclose that event with an intent fraudulently to secure the benefit or payment in a greater amount or quantity than is due, in violation of Mich. Comp. Laws §400.603(3).

382. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Main Street Pharmacy LLC and ProCare Pharmacy LLC, conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (3) of Mich. Comp. Laws § 400.603, making CVS Health Corporation, CVS Pharmacy Inc. and both of their co-conspirators jointly liable.

383. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Main Street Pharmacy LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (3) of Mich. Comp. Laws § 400.603, making

CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

384. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Arbor Drugs Inc., Woodward Detroit CVS LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (3) of Mich. Comp. Laws § 400.603, making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

385. The state of Michigan, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

386. Based on the foregoing allegations, the state of Michigan has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWENTY-ONE**

(Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*)

387. Relator re-alleges Paragraphs 1 through 220 inclusive.

388. Defendant Grand St. Paul CVS LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Minn. Stat. § 15C.02(a)(1).

389. Defendant Grand St. Paul CVS LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Minn. Stat. § 15C.02(a)(2).

390. Defendant Grand St. Paul CVS LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Minnesota, in violation of Minn. Stat. § 15C.02(a)(7).

391. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Grand St. Paul CVS LLC, have conspired with it to commit violations of subparagraphs (1), (2) and (7) of Minn. Stat. § 15C.02(a), making CVS Health Corporation, CVS Pharmacy Inc. and Grand St. Paul CVS LLC jointly liable pursuant to Minn. Stat. § 15C.02(a)(3).

392. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Grand St. Paul CVS LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (7) of Minn. Stat. § 15C.02(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

393. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Grand St. Paul CVS LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of Minn. Stat. § 15C.02(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

394. The state of Minnesota, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

395. Based on the foregoing allegations, the state of Minnesota has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-TWO

(Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*)

396. Relator re-alleges Paragraphs 1 through 220 inclusive.

397. Defendant Montana CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Montana CVS Pharmacy LLC (a).

398. Defendant Montana CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Mont. Code Ann. § 17-8-403(1)(b).

399. Defendant Montana CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Montana, in violation of Mont. Code Ann. § 17-8-403(1)(g).

400. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Montana CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (a), (b) and (g) of Mont. Code Ann. § 17-8-403(1), making CVS Health Corporation, CVS Pharmacy Inc. and Grand St. Paul CVS LLC jointly liable pursuant to Mont. Code Ann. § 17-8-403(1)(c).

401. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Montana CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (a), (b) and (g) of Mont. Code Ann. § 17-8-403(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

402. The Defendant [redacted] [redacted] [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Montana CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (g) of Mont. Code Ann. §

17-8-403(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

403. The state of Montana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

404. Based on the foregoing allegations, the state of Montana has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWENTY-THREE**

(Nevada False Claims Act, Nev. Rev. Stat. § 357.010 *et seq.*)

405. Relator re-alleges Paragraphs 1 through 220 inclusive.

406. Defendants CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, Desert Eastern CVS LLC, Henderson CVS LLC, Longs Drug Store California LLC, Maryland Parkway CVS LLC, Nevada CVS Pharmacy LLC, Senip CVS LLC and Warm Springs Road CVS LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of Nev. Rev. Stat. § 357.040(1)(a).

407. Defendants CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, Desert Eastern CVS LLC, Henderson CVS LLC, Longs Drug Store California LLC, Maryland Parkway CVS LLC, Nevada CVS Pharmacy LLC, Senip CVS LLC and Warm Springs Road CVS LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Nev. Rev. Stat. § 357.040(1)(b).

408. Defendants CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, Desert Eastern CVS LLC, Henderson CVS LLC, Longs Drug Store California LLC, Maryland Parkway CVS LLC, Nevada CVS Pharmacy LLC, Senip CVS LLC and Warm Springs Road CVS LLC

have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Nevada, in violation of Nev. Rev. Stat. § 357.040(1)(g).

409. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, Desert Eastern CVS LLC, Henderson CVS LLC, Longs Drug Store California LLC, Maryland Parkway CVS LLC, Nevada CVS Pharmacy LLC, Senip CVS LLC and Warm Springs Road CVS LLC, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (a), (b) and (g) of Nev. Rev. Stat. § 357.040(1), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to Nev. Rev. Stat. § 357.040(1)(a)(c).

410. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, Desert Eastern CVS LLC, Henderson CVS LLC, Longs Drug Store California LLC, Maryland Parkway CVS LLC, Nevada CVS Pharmacy LLC, Senip CVS LLC and Warm Springs Road CVS LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (a), (b) and (g) of Nev. Rev. Stat. § 357.040(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

411. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused CVS 2948 Henderson LLC, CVS 2989 Las Vegas LLC, Desert Eastern CVS LLC, Henderson CVS LLC, Longs Drug Store California LLC, Maryland Parkway CVS LLC, Nevada CVS Pharmacy LLC, Senip CVS LLC, Warm Springs Road CVS LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b)

and (g) of Nev. Rev. Stat. § 357.040(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

412. The state of Nevada, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

413. Based on the foregoing allegations, the state of Nevada has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWENTY-FOUR**

(New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 *et seq.*)

414. Relator re-alleges Paragraphs 1 through 220 inclusive.

415. Defendants Bergen Mall NJ CVS Inc., Main Street Pharmacy LLC and New Jersey CVS Pharmacy LLC knowingly presented or caused to be presented false claims for payment or approval, in violation of N.J. Stat. Ann. § 2A:32C-3(a).

416. Defendants Bergen Mall NJ CVS Inc., Main Street Pharmacy LLC and New Jersey CVS Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the state of New Jersey, in violation of N.J. Stat. Ann. § 2A:32C-3(b).

417. Defendants Bergen Mall NJ CVS Inc., Main Street Pharmacy LLC and New Jersey CVS Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property the state of New Jersey, in violation of N.J. Stat. Ann. § 2A:32C-3(g).

418. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Bergen Mall NJ CVS Inc., Main Street Pharmacy LLC and New Jersey CVS

Pharmacy LLC, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (a), (b) and (g) of N.J. Stat. Ann. § 2A:32C-3, making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to N.J. Stat. Ann. § 2A:32C-3(c).

419. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Bergen Mall NJ CVS Inc., Main Street Pharmacy LLC and New Jersey CVS Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (a), (b) and (g) of N.J. Stat. Ann. § 2A:32C-3, making CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

420. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Bergen Mall NJ CVS Inc., Main Street Pharmacy LLC, New Jersey CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (g) of N.J. Stat. Ann. § 2A:32C-3, making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

421. The state of New Jersey, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

422. Based on the foregoing allegations, the state of New Jersey has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWENTY-FIVE**

(New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*)

423. Relator re-alleges Paragraphs 1 through 220 inclusive.

424. Defendant CVS Pharmacy Inc. has knowingly presented or caused to be presented false claims for payment, in violation of N.M. Stat. Ann. § 27-14-4(A).

425. Defendant CVS Pharmacy Inc. has knowingly made or used, or caused to be made or used, false records or statements to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state of New Mexico, in violation of N.M. Stat. Ann. § 27-14-4(C).

426. Defendant CVS Pharmacy Inc. has knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid or decrease an obligation to pay or transmit money or property to the state of New Mexico, in violation of N.M. Stat. Ann. § 27-14-4(E).

427. Defendant CVS Health Corporation, as the parent of CVS Pharmacy Inc., has conspired with it to commit violations of subparagraphs (A), (C) and (E) of N.M. Stat. Ann. § 27-14-4, making CVS Health Corporation and CVS Pharmacy Inc. jointly liable pursuant to N.M. Stat. Ann.§ 27-14-4 (D).

428. Defendant CVS Health Corporation, as the parent of CVS Pharmacy Inc., has provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (A), (C) and (E) of N.M. Stat. Ann.§ 27-14-4, making CVS Health Corporation jointly liable with it pursuant to those subparagraphs.

429. The Defendant [redacted] [redacted] [redacted] Eye Drop Manufacturers and Distributors have knowingly caused CVS Pharmacy Inc. and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (A), (C) and (E) of N.M. Stat. Ann.§ 27-14-4, making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

430. The state of New Mexico, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

431. Based on the foregoing allegations, the state of New Mexico has suffered actual damages, with the exact amount to be determined at trial.

**COUNT TWENTY-SIX**

(New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*)

432. Relator re-alleges Paragraphs 1 through 220 inclusive.

433. Defendants CVS Albany LLC, CVS Bellmore Avenue LLC and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of N.Y. State Fin. Law § 189(1)(a).

434. Defendants CVS Albany LLC, CVS Bellmore Avenue LLC and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of N.Y. State Fin. Law § 189(1)(b).

435. Defendants CVS Albany LLC, CVS Bellmore Avenue LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of New York, in violation of N.Y. State Fin. Law § 189(1)(h).

436. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of CVS Albany LLC, CVS Bellmore Avenue LLC and ProCare Pharmacy LLC, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (a), (b) and (h) of N.Y. State Fin. Law § 189(1), making CVS Health Corporation,

CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to N.Y. State Fin. Law § 189(1)(c).

437. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of CVS Albany LLC, CVS Bellmore Avenue LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (a), (b) and (h) of N.Y. State Fin. Law § 189(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

438. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused CVS Albany LLC, CVS Bellmore Avenue LLC, ProCare Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (h) of N.Y. State Fin. Law § 189(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

439. The state of New York, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

440. Based on the foregoing allegations, the state of New York has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-SEVEN

(North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*)

441. Relator re-alleges Paragraphs 1 through 220 inclusive.

442. Defendants North Carolina CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of N.C. Gen. Stat. § 1-607(a)(1).

443. Defendants North Carolina CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of N.C. Gen. Stat. § 1-607(a)(2).

444. Defendants North Carolina CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of North Carolina, in violation of N.C. Gen. Stat. § 1-607(a)(7).

445. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of North Carolina CVS Pharmacy LLC and ProCare Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (7) of N.C. Gen. Stat. § 1-607(a), making CVS Health Corporation, CVS Pharmacy Inc. and both of their co-conspirators jointly liable pursuant to N N.C. Gen. Stat. § 1-607(a)(c).

446. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of North Carolina CVS Pharmacy LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (7) of N.C. Gen. Stat. § 1-607(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

447. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused North Carolina CVS Pharmacy LLC, ProCare Pharmacy LLC

and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of N.C. Gen. Stat. § 1-607(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

448. The state of North Carolina, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

449. Based on the foregoing allegations, the state of North Carolina has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-EIGHT

(Oklahoma False Claims Act, Okla. Stat. Ann. tit. 63, § 5053 *et seq.*)

450. Relator re-alleges Paragraphs 1 through 220 inclusive.

451. Defendant Oklahoma CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Okla. Stat. Ann. tit. 63, § 5053.1(B)(1).

452. Defendant Oklahoma CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or, in violation of Okla. Stat. Ann. tit. 63, § 5053.1(B)(2).

453. Defendant Oklahoma CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state of Oklahoma, in violation of Okla. Stat. Ann. tit. 63, § 5053.1(B)(7).

454. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Oklahoma CVS Pharmacy LLC, have conspired with it to commit violations of

subparagraphs (1), (2) and (7) of Okla. Stat. Ann. tit. 63, § 5053.1(B), making CVS Pharmacy Inc. and Oklahoma CVS Pharmacy LLC jointly liable pursuant to Okla. Stat. Ann. tit. 63, § 5053.1(B)(3).

455. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Oklahoma CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (7) of Okla. Stat. Ann. tit. 63, § 5053.1(B), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

456. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Oklahoma CVS Pharmacy LLC to violate subparagraphs (1), (2) and (7) of Okla. Stat. Ann. tit. 63, § 5053.1(B), making the [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

457. The state of Oklahoma, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

458. Based on the foregoing allegations, the state of Oklahoma has suffered actual damages, with the exact amount to be determined at trial.

## COUNT TWENTY-NINE

(Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*)

459. Relator re-alleges Paragraphs 1 through 220 inclusive.

460. Defendants CVS Pharmacy Inc., ProCare Pharmacy LLC and Rhode Island CVS Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of R.I. Gen. Laws § 9-1.1-3(a)(1).Defendant CVS has knowingly made or

used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of R.I. Gen. Laws § 9-1.1-3(a)(2).

461. Defendants CVS Pharmacy Inc., ProCare Pharmacy LLC and Rhode Island CVS Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Rhode Island, in violation of R.I. Gen. Laws § 9-1.1-3(a)(7).

462. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC and Rhode Island CVS Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (7) of R.I. Gen. Laws § 9-1.1-3(a), making CVS Health Corporation, CVS Pharmacy Inc. and both of their co-conspirators jointly liable pursuant to R.I. Gen. Laws § 9-1.1-3(a) (3).

463. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC and Rhode Island CVS Pharmacy LLC, have provided their dispensing and billing systems, has established their policies and procedures, and has knowingly "caused" them to violate subparagraphs (1), (2) and (7) of R.I. Gen. Laws § 9-1.1-3(a), making CVS Pharmacy Inc. jointly liable pursuant to those subparagraphs.

464. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused CVS Pharmacy Inc., ProCare Pharmacy LLC, Rhode Island CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (7) of R.I. Gen. Laws § 9-1.1-3(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

465. The state of Rhode Island, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

466. Based on the foregoing allegations, the state of Rhode Island has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTY**

(Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*)

467. Relator re-alleges Paragraphs 1 through 220 inclusive.

468. Defendant Tennessee CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(A).

469. Defendant Tennessee CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(B).

470. Defendant Tennessee CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Tennessee, in violation of Tenn. Code Ann. § 71-5-182(a)(1)(D).

471. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Tennessee CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (A), (B) and (D) of Tenn. Code Ann. § 71-5-182(a)(1), making CVS Health Corporation, CVS Pharmacy Inc. and Tennessee CVS Pharmacy LLC jointly liable pursuant to Tenn. Code Ann. § 71-5-182(a)(1) (C).

472. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Tennessee CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (A), (B) and (D) of Tenn. Code Ann. § 71-5-182(a)(1), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

473. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Tennessee CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (A), (B) and (D) of Tenn. Code Ann. § 71-5-182(a)(1), making the [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

474. The state of Tennessee, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

475. Based on the foregoing allegations, the state of Tennessee has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTY-ONE**

(Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code § 36.001 *et seq.*)

476. Relator re-alleges Paragraphs 1 through 220 inclusive.

477. Defendants Care Center Pharmacy LLC, CVS Pharmacy Inc., Main Street Pharmacy, LLC and ProCare Pharmacy LLC have knowingly made or caused to be made false statements of material fact to permit a person to receive a benefit or payment that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Hum. Res. Code § 36.002(1).

478. Defendants Care Center Pharmacy LLC, CVS Pharmacy Inc., Main Street Pharmacy, LLC and ProCare Pharmacy LLC have knowingly concealed or failed to disclose information permitting a person to receive a benefit or payment that is not authorized or that is greater than the benefit or payment that is authorized, in violation of Tex. Hum. Res. Code § 36.002(2).

479. Defendants Care Center Pharmacy LLC, CVS Pharmacy Inc., Main Street Pharmacy, LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Texas, in violation of Tex. Hum. Res. Code § 36.002(12).

480. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Care Center Pharmacy LLC, Main Street Pharmacy, LLC and ProCare Pharmacy LLC, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (12) of Tex. Hum. Res. Code § 36.002, making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to Tex. Hum. Res. Code § 36.002 (3).

481. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Care Center Pharmacy LLC, Main Street Pharmacy, LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (12) of Tex. Hum. Res. Code § 36.002, making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

482. The Defendant [redacted], Eye Drop Manufacturers and Distributors have knowingly caused Care Center Pharmacy LLC, CVS Pharmacy Inc., Main Street

Pharmacy, LLC, ProCare Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (12) of Tex. Hum. Res. Code § 36.002, making them jointly liable with them pursuant to those subsections.

483. The state of Texas, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

484. Based on the foregoing allegations, the state of Texas has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTY-TWO**

(Vermont False Claims Act, Vt. Stat. Ann. tit. 32, § 631 et seq.;)

485. Relators re-allege Paragraphs 1 through 111 inclusive.

486. Defendant Vermont CVS Pharmacy LLC has knowingly presented or caused to be presented false claims for payment or approval, in violation of Vt. Stat. Ann. tit. 32, § 631(a)(1).

487. Defendant Vermont CVS Pharmacy LLC has knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Vt. Stat. Ann. tit. 32, § 631(a)(2).

488. Defendant Vermont CVS Pharmacy LLC has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Vermont, in violation of Vt. Stat. Ann. tit. 32, § 631(a)(10).

489. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of Vermont CVS Pharmacy LLC, have conspired with it to commit violations of subparagraphs (1), (2) and (10) of Vt. Stat. Ann. tit. 32, § 631(a), making CVS Health Corporation,

CVS Pharmacy Inc. and Vermont CVS Pharmacy LLC jointly liable pursuant to Vt. Stat. Ann. tit. 32, § 631(a) (3).

490. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parent of Vermont CVS Pharmacy LLC, have provided its dispensing and billing systems, established its policies and procedures, and otherwise knowingly "caused" it to violate subparagraphs (1), (2) and (10) of Vt. Stat. Ann. tit. 32, § 631(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with it pursuant to those subparagraphs.

491. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused Vermont CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (10) of Vt. Stat. Ann. tit. 32, § 631(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

492. The state of Vermont, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

493. Based on the foregoing allegations, the state of Vermont has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTY-THREE**

(Virginia Fraud Against Taxpayer Act, Va. Code Ann. § 8.01-216.1 *et seq.*)

494. Relator re-alleges Paragraphs 1 through 220 inclusive.

495. Defendants CVS Of Virginia Inc., Main Street Pharmacy LLC, ProCare Pharmacy LLC and Virginia CVS Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of Va. Code Ann. § 8.01-216.3(A)(1).

496. Defendants CVS Of Virginia Inc., Main Street Pharmacy LLC, ProCare Pharmacy LLC and Virginia CVS Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Va. Code Ann. § 8.01-216.3(A)(2).

497. Defendants CVS Of Virginia Inc., Main Street Pharmacy LLC, ProCare Pharmacy LLC and Virginia CVS Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the commonwealth of Virginia, in violation of Va. Code Ann. § 8.01-216.3(A)(7).

498. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of CVS Of Virginia Inc., Main Street Pharmacy LLC, ProCare Pharmacy LLC and Virginia CVS Pharmacy LLC, have conspired with each of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (7) of Va. Code Ann. § 8.01-216.3(A), making CVS Health Corporation, CVS Pharmacy Inc. and each of their co-conspirators jointly liable pursuant to Va. Code Ann. § 8.01-216.3(A).

499. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of CVS Of Virginia Inc., Main Street Pharmacy LLC, ProCare Pharmacy LLC and Virginia CVS Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (7) of Va. Code Ann. § 8.01-216.3(A), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

500. The Defendant [redacted] Eye Drop Manufacturers and Distributors are liable for knowingly causing CVS Of Virginia Inc., Main Street Pharmacy LLC, ProCare Pharmacy LLC, Virginia CVS Pharmacy LLC and other pharmacies, including Walgreens

and Rite Aid, to violate subparagraphs (1), (2) and (7) of Va. Code Ann. § 8.01-216.3(A), making Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

501. The state of Virginia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

502. Based on the foregoing allegations, the commonwealth of Virginia has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTY-FOUR**

(Washington Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.82.010 *et seq.*)

503. Relator re-alleges Paragraphs 1 through 220 inclusive.

504. Defendants ProCare Pharmacy LLC and Washington CVS Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of Wash. Rev. Code § 74.66.020(1)(a).

505. Defendants ProCare Pharmacy LLC and Washington CVS Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of Wash. Rev. Code § 74.66.020(1)(b).

506. Defendants ProCare Pharmacy LLC and Washington CVS Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state of Washington, in violation of Wash. Rev. Code § 74.66.020(1)(g).

507. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC and Washington CVS Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (a),

(b) and (g) of Wash. Rev. Code § 74.66.020(1), making CVS Health Corporation, CVS Pharmacy Inc. and both of their co-conspirators jointly liable pursuant to Wash. Rev. Code § 74.66.020(c).

508. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of ProCare Pharmacy LLC and Washington CVS Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (a), (b) and (g) of Wash. Rev. Code § 74.66.020(1), making CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

509. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused ProCare Pharmacy LLC, Washington CVS Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (a), (b) and (g) of Wash. Rev. Code § 74.66.020(1), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to subparagraphs (a), (b) and (g) of Wash. Rev. Code § 74.66.020(1).

510. The state of Washington, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

511. Based on the foregoing allegations, the state of Washington has suffered actual damages, with the exact amount to be determined at trial.

## COUNT THIRTY-FIVE

(District of Columbia False Claims Act, D.C. Code § 2-381.01 *et seq.*)

512. Relator re-alleges Paragraphs 1 through 220 inclusive.

513. Defendants District Of Columbia CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly presented or caused to be presented false claims for payment or approval, in violation of D.C. Code § 2-381.02(a)(1).

514. Defendants District Of Columbia CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly made or used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of D.C. Code § 2-381.02(a)(2).

515. Defendants District Of Columbia CVS Pharmacy LLC and ProCare Pharmacy LLC have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the District of Columbia, in violation of D.C. Code § 2-381.02(a)(6).

516. Defendant CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of District Of Columbia CVS Pharmacy LLC and ProCare Pharmacy LLC, have conspired with both of them in a "wheel and spoke" conspiracy to commit violations of subparagraphs (1), (2) and (6) of D.C. Code § 2-381.02(a), making CVS Health Corporation, CVS Pharmacy Inc. and both of their co-conspirators jointly liable pursuant to D.C. Code § 2-381.02(a)(3).

517. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of District Of Columbia CVS Pharmacy LLC and ProCare Pharmacy LLC, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate subparagraphs (1), (2) and (6) of D.C. Code § 2-381.02(a), making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with them pursuant to those subparagraphs.

518. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused the District Of Columbia CVS Pharmacy LLC, ProCare

Pharmacy LLC and other pharmacies, including Walgreens and Rite Aid, to violate subparagraphs (1), (2) and (6) of D.C. Code § 2-381.02(a), making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those subparagraphs.

519. The District of Columbia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

520. Based on the foregoing allegations, the District of Columbia has suffered actual damages, with the exact amount to be determined at trial.

**COUNT THIRTY-SIX**

(DOE States' False Claims Acts and Insurance Fraud Prevention Acts That Have Not Been Enacted or Are Not Effective at the Time of Filing)

521. Relator repeats and realleges each and every allegation contained in paragraphs 1 through 220 above as though fully set forth herein.

522. This is a claim for treble damages and penalties against all Defendants under state false claims acts and insurance fraud prevention acts that are enacted or amended subsequent to the filing of this Complaint to permit the filing of a qui tam suit under the circumstances presented by this case. The States that may enact or amend false claims acts include, among others, Alabama, Arizona, Arkansas, Idaho, Kansas, Kentucky, Maine, Mississippi, Missouri, Nebraska, New Hampshire, Ohio, Oregon, Pennsylvania, South Carolina, South Dakota, Utah, West Virginia, Wisconsin, and Wyoming. The states that may enact or amend insurance fraud prevention acts are all states except California and Illinois.

523. The Defendant CVS Operating Entities knowingly presented or caused to be presented, false or fraudulent claims to each of the states listed above or to private insurance companies doing business in those states.

524. The Defendant CVS Operating Entities have knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the states listed above, or private insurance companies doing business in those states, to approve and pay such false and fraudulent claims.

525. The Defendant CVS Operating Entities have knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the state governments and private insurers of each of the states listed above.

526. The Defendant CVS Operating Entities have knowingly paid kickbacks, employed runners and cappers or paid inducements to procure patients in violation of the insurance fraud prevention acts of each of the states listed above.

527. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of the CVS Operating Entities, have conspired with them in a "wheel and spoke" conspiracy to commit violations of the false claims laws and the insurance fraud prevention acts of each of the states listed above, making CVS Health Corporation, CVS Pharmacy Inc. and all of their co-conspirators jointly liable.

528. Defendants CVS Health Corporation and CVS Pharmacy Inc., as the direct or indirect parents of the CVS Operating Entities, have provided their dispensing and billing systems, established their policies and procedures, and otherwise knowingly "caused" them to violate the false claims laws or insurance fraud prevention laws of each of the states listed above, making CVS Health Corporation and CVS Pharmacy Inc. jointly liable with the CVS Operating Entities pursuant to such laws.

529. The Defendant [redacted] Eye Drop Manufacturers and Distributors have knowingly caused the CVS Operating Entities and other pharmacies, including

Walgreens and Rite Aid, to violate the false claims acts or insurance fraud prevention laws of each of the states listed above, making the Defendant [redacted] Eye Drop Manufacturers and Distributors jointly liable with them pursuant to those laws.

530. The state governments and private insurers of each of the states listed above, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by the Defendants, paid and continues to pay the claims that would not be paid but for the Defendants' unlawful conduct.

531. By reason of the Defendants' acts, the states listed above have been damaged and continue to be damaged in substantial amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Nicholas Zimniski prays for the following relief:

1. On Counts One through Thirty-Six, judgment for the United States or the state, as applicable, against the designated Defendants in an amount equal to three times the damages the federal or state plaintiff or private insurer, respectively, has sustained because of the Defendants' actions, plus a civil penalty in the amount allowed by each applicable statute;

2. On Counts One through Thirty-Six, an award to the Relator for the maximum allowed under the federal or state law under which suit is brought by the Relator on behalf of the federal or state plaintiffs, respectively;

3. Against the Defendants for attorney's fees, expenses, and costs of suit; and

4. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby demands that this matter be tried before a jury.

Respectfully submitted,

*FILED UNDER SEAL*

[redacted]

**WATERS & KRAUS, LLP**
Wm. Paul Lawrence, II
(*Pro Hac Vice* to be submitted)
plawrence@waterskraus.com
Washington D.C. Metro Office
37163 Mountville Rd.
Middleburg, VA 20117
Telephone: (540) 687-6999
Fax: (540) 687-5457

Attorneys for Nicholas Zimniski